IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHANSELOR BELL,

      Plaintiff,

vs.                                                                            No. CIV 06-1137 JB/ACT

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss Plaintiff's New Mexico Constitution Claims, filed July 9, 2007 (Doc. 20). The Court held a hearing on the motion on October 4, 2007. The primary issue is whether a federal court has jurisdiction over a claim for violation of the New Mexico Constitution. For the reasons stated at the hearing, and for reasons stated herein consistent with those already stated, the Court will grant the Defendant's Motion to Dismiss Plaintiff's New Mexico Constitution Claims, because the Court determines that, as a matter of law, a plaintiff may not assert a claim for violation of the New Mexico Constitution, absent a waiver of immunity under the New Mexico Tort Claims Act, and because the Court finds no such waiver, the Court will dismiss Plaintiff Chanselor Bell's claims alleging violations of the New Mexico Constitution without prejudice.

**PROCEDURAL BACKGROUND**

On July 26, 2006, Plaintiff Chanselor Bell ("Bell") filed his Complaint in the Second Judicial District Court for the County of Bernalillo, New Mexico. See Notice of Removal ("Notice of Removal"), filed Nov. 22, 2006 (Doc. 1), Group Exhibit A, Complaint for Violation of Civil Rights

Pursuant to Section 1983, Title VI of the Civil Rights Act of 1964 and Section 504 and Civil Action following Exhaustion of IDEA Administrative Procedures. On November 22, 2006, Defendants Albuquerque Public Schools, Debi Hines, Lori Rowe, and Greg Brown, removed the action to the federal court. See Notice of Removal at 1. The Defendants submitted a collective Answer on November 27, 2006. See All Defendants' Answer to First Amended Complaint for Violation of Civil Rights Pursuant to Section 1983, Title VI of the Civil Rights Act of 1964 and Section 504 and Civil Action Following Exhaustion of IDEA Administrative Procedures, filed Nov. 27, 2006 (Doc. 3).

On July 2, 2007, Bell filed a Second Amended Complaint. See Second Amended Complaint for Violation of Civil Rights Pursuant to Section 1983, Title VI of the Civil Rights Act of 1964 and Section 504 and Civil Action following Exhaustion of IDEA Administrative Procedures ("Second Amended Complaint"), filed July 2, 2007 (Doc. 19). Bell's Second Amended Complaint contains claims for relief under, and references, the New Mexico Constitution. See Second Amended Complaint ¶¶ 1, 32, 34, 42, 59, 60, at 1, 7-8, 11. Bell asks for a jury trial on all matters allowed by law, a review of the administrative record of the IDEA administrative process, consideration of additional evidence as requested and allowed by law, an order for compensatory education in the form of tuition and payment for any necessary tutoring for all remedial post-secondary classes necessitated by denial of a free and public education ("FAPE"), award of compensatory damages for lost educational opportunity, lost wages, lost earning capacity, and emotional distress, attorney fees and costs as allowed by law, and "such other relief as the Court deems appropriate." Second Amended Complaint, Prayer for Relief ¶¶ 1-5, at 11.

APS answered Bell's Amended Complaint on July 17, 2007. See Defendant's Answer to

Second Amended Complaint for Violation of Civil Rights Pursuant to Section 1983, Title VI of the Civil Rights Act of 1964 and Section 504 and Civil Action following Exhaustion of IDEA Administrative Procedures ("Answer"), filed July 17, 2007 (Doc. 29).

APS filed a motion to dismiss Bell's New Mexico constitutional claims on July 9, 2007. See Motion to Dismiss Plaintiff's New Mexico Constitutional Claims ("APS' dismissal motion"), filed July 9, 2007 (Doc. 20). On July 23, 2007, Bell responded to APS' dismissal motion. See Response in Opposition to Defendant's Motion to Dismiss Plaintiff's New Mexico Constitutional Claims ("Bell's Response"), filed July 23, 2007 (Doc. 33). APS replied to Bell's Response on August 2, 2007. See Defendant's Reply Brief in Support of It's Motion to Dismiss Plaintiff's New Mexico Constitutional Claims, filed Aug. 2, 2007 (Doc. 34). Briefing was completed on APS' motion to dismiss on September 9, 2007. See Doc. 37. On October 18, 2007, however, APS submitted supplemental briefing in the form of a letter to the Court. See Letter from Michael L. Carrico to the Court, filed Oct. 18, 2007 (Doc. 52). Attached to that letter was Duke v. Grady Municipal Schools, 127 F.3d 972 (10th Cir. 1997). See Mr. Carrico's October 18, 2007 letter at 2-11.

APS moves the Court, pursuant to rule 12(c) of the Federal Rules of Civil Procedure, for dismissal of Bell's claims alleging violations of the New Mexico Constitution. In its dismissal motion, APS argues that the Court should dismiss paragraphs 32, 34, 59, and 60 of Bell's Second Amended Complaint. See id. at 1-2. APS contends that "[t]here is no private cause of action for an alleged violation of the New Mexico Constitution, absent a waiver under the New Mexico Tort Claims Act." Id. at 2.

APS focuses its attention on any damages that Bell seeks arising from these alleged violations. See id. at 3-4. APS acknowledges that Bell's Second Amended Complaint did not

identify Article XII, § 1 of the New Mexico Constitution as a basis for his claims, but notes that Bell asserts the New Mexico Constitution entitles him to a FAPE. See id. at 4. In any case, APS argues Article XII, § 1 of the New Mexico Constitution "does not create a private action for damages." Id.

Bell admits that he mistakenly referenced Article VI, § 13 as the source of his right to an appropriate education. See Bell's Response at 1 n.1. He asks the Court to allow amendment by interlineation to refer to Article XII, § 1 as the proper citation for his right to a public education. See id. Bell concedes that the New Mexico Tort Claims Act (NMTCA) does not contain any "positive language . . . that waivers of immunity designed to apply to constitutional claims." Bell's Response at 2. Bell notes, however, that APS relies only upon cases which address claims for damages under the New Mexico Constitution. See id. Bell contends that APS' "motion provides no authority to dismiss Plaintiff's claims for nonmonetary relief." Id. Bell maintains that "[t]herefore, by the terms of Defendant's motion, Plaintiff's claims for nonmonetary relief pursuant to the New Mexico Constitution survive this motion because all authority cited by APS is most properly limited to argument against suits for damages only." Id. at 2-3.

Bell argues the NMTCA leaves in place nonmonetary relief historically available against governmental entities. See id. at 3 (citing N.M.S.A. 1978 § 41-4-17(A)). He also contends that the New Mexico Declaratory Judgment Act also allows litigants to seek declaratory and supplemental relief, and does not limit that relief to actions under waives of immunity detailed in the NMTCA. See Bell's Response at 3. Lastly, Bell contends that his right to a FAPE arising from Article XII, § 1 of the New Mexico Constitution is self-executing. See id. at 3-4. Bell notes that the New Mexico Constitution provides a fundamental right to public education, unlike the United States Constitution. See id. at 4 (noting other areas in which the New Mexico Constitution affords broader

rights than the federal constitution, such as equal protection of individuals with disabilities.).  Bell asserts that his claims will not be fully remedied by monetary relief.  See id. at 5 (citing to Second Amended Complaint ¶ 19, at 4-5.).

APS notes that Bell does not dispute that the Court should dismiss his claims for damages for his state law constitutional claims.  See APS' Reply at 1 (citing Bell's Response, at 2-3.).  APS argues that Bell's claims for relief in his Second Amended Complaint are insufficient under rule 8(a)(3) of the Federal Rules of Civil Procedure.  See APS' Reply at 2.  APS contends that Bell's claims for relief are generic and therefore do not put APS on notice of the claim being asserted.  See id.  APS argues that its need for notice of the relief Bell is seeking in this case is especially acute because it necessitates the parties addressing whether Bell exhausted his administrative remedies.  See id. at 2-3.  APS maintains that, where Bell is asserting claims under the Individuals with Disabilities Education Act ("IDEA"), he "must exhaust his administrative remedies before pursuing claims under other theories."  Id. at 3.

APS characterizes Bell's desire to seek injunctive or declaratory relief as vague.  See id. at 3 (citing Bell's Response, at 3).  APS argues that Bell's Second Amended Complaint "does not actually seek expungement of records," APS' Reply at 3, and could not do so as a matter of law, see APS' Reply at 4 (citing Carter v. Orleans Parish Public Sch., 725 F.2d 261, 263 (5th Cir. 1984).  APS contends that Bell fails to identify expungement of records, or any other injunctive or declaratory relief, in the Joint Status Report and Provisional Discovery Plan submitted to the Court.  See APS' Reply at 5 (citing Doc. 14, at 3-4).

At the hearing on this matter, APS stated: "We're not taking the position that a plaintiff may not bring a claim under the New Mexico Constitution."  Transcript of Hearing ("Tr.") at 4:3-4 (taken

October 4, 2007), filed October 21, 2007 (Doc. 54 (Court Only)). APS conceded that a private cause of action for injunctive relief exists. See id. at 5:2-6 (Court & Carrico). Instead, APS argued the issue raised by its motion to dismiss "is whether or not plaintiffs have pled such a claim for injunctive and declaratory relief under the New Mexico constitution." Id. at 4:5-7 (Carrico). APS characterized Bell's references to the New Mexico constitution in his Second Amended Complaint as "tag-along claims" that are "sort of generalized assertions that there are violations of the New Mexico constitution citing certain constitutional provisions." Id. at 4:9-13 (Carrico). APS argued those assertions are not "tied to any specific allegations in the complaint." Id. at 4:14-15 (Carrico).

APS contended that the NMTCA "does not waive immunity for constitutional torts." Id. at 5:18-19 (Carrico). APS argued that N.M.S.A. 1978 § 41-4-12 waives only immunity for claims against law enforcement officers. See id. at 5:20-25( Carrico). APS asserted that, "by negative implication, the fact that they, the legislature, felt the need to carve out the exception in that particular instance means that the intent is that there are no claims of constitutional torts against governmental actors other than law enforcement officers." Id. at 6:1-5 (Carrico). APS reiterated its argument that the only claims that could survive, if Bell's damage claims are dismissed, are those for injunctive or declaratory relief, but that Bell did not actually assert any claims for that relief under the state constitution. See id. at 10:3-9 (Carrico). APS agreed that, if claims for injunctive or declaratory relief were made in Bell's complaint, then it "would agree if it was articulated that this is the relief, and set some parameters, then you can do discovery to delve into those issues and to put some context on the claims that are actually being made." Id. at 16:25-17:10 (Carrico). APS contended, however, that it "read the complaint not to make any claim for injunctive or declaratory relief." Id. at 16:25-17:1 (Carrico).

Bell argued that there is no positive language limiting the right to bring constitutional claims for injunctive relief in the NMTCA itself. See id. at 10:19-22 (Ford). Bell also asserted that there are New Mexico constitutional rights which are self-executing and that there should be some remedy available for those claims. See id. at 10:22-25 (Ford). Bell contended he did not need a waiver under the NMTCA for equitable relief. See id. at 11:1-3 (Court & Ford). Bell argued that he "put his records at issue in his complaint" in paragraphs 14 and 19. See id. at 14:1-5 (Ford).

### FEDERAL RULES OF CIVIL PROCEDURE

**1.     Rule 8(a)(3).**

"A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain . . . a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded." Fed. R. Civ. P. 8(a)(3). See Automobile Ins. Co. of Hartford, Conn. v. Barnes-Manley Wet Wash Laundry Co., 168 F.2d 381, 386 (10th Cir. 1948) (observing that "Rules 8(a)(3) and 8(e)(2) of the Rules of Civil Procedure authorized the Insurance Company to state as many separate claims as it has, regardless of consistency, and to seek relief in the alternative."). The United States Court of Appeals for the Tenth Circuit has acknowledged that relief may be demanded in the alternative. See Clark v. Haas Group, Inc., 953 F.2d 1235, 1239 (10th Cir. 1992).

**2.     Rule 12(c).**

Rule 12(c) of the Federal Rules of Civil Procedure provides:

> Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion

by Rule 56.

Fed. R. Civ. P. 12(c). "'A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6).'" Archuleta v. City of Santa Fe, No. Civ. 04-0247 JB/DJS, 2005 WL 3662903 at *3 (D.N.M. Nov. 4, 2005)(Browning, J.)(quoting Atl. Richfield Co. v. Farm Credit Bank, 226 F.3d 1138, 1160 (10th Cir. 2000)).  "When a federal court reviews the sufficiency of a complaint [under rule 12(b)(6)], before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. at 236.  The court accepts as true "all well-pleaded allegations in the complaint and construe them in the light most favorable to the plaintiff." Archuleta v. City of Santa Fe, 2005 WL 3662903 at *3.

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citation omitted). See Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red

Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.

## LAW REGARDING ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment prohibits federal courts from exercising jurisdiction over any suit in law or equity against a state. See U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). The Supreme Court of the United States has interpreted the Eleventh Amendment to provide immunity against suits brought without the State's consent by both citizens of another state and citizens of the state being sued. See Tennessee v. Lane, 541 U.S. 509, 517 (2004). In sum, "[t]he Eleventh Amendment confirms the sovereign status of the States by shielding them from suits by individuals absent their consent." Frew v. Hawkins, 540 U.S. 431, 437 (2004)(citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996)). "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 107 (1984).

While at one time, school districts in New Mexico enjoyed Eleventh Amendment immunity, see Martinez v. Board of Education of Taos Municipal School District, 748 F.2d 1393 (10th Cir. 1984), overruled by Duke v. Grady Municipal Schools, 127 F.3d 972, 978 (10th Cir. 1997), such entities no longer enjoy such immunity. "[S]chool districts and their governing boards in New Mexico are not arms of the state entitled to Eleventh Amendment immunity." Duke v. Grady Municipal Schls., 127 F.3d at 978. Because New Mexico is not legally liable for a judgment against a school district, school districts and their governing boards are not shielded by the Eleventh Amendment from liability in a § 1983 action in federal court. See id. at 981.

## THE NEW MEXICO TORT CLAIMS ACT

The New Mexico Tort Claims Act ("NMTCA") was enacted because the "legislature recognized "the inherent unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity." N.M.S.A. 1978 § 41-4-2(A). The New Mexico Legislature, however, also recognized "that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done." N.M.S.A. 1978 § 41-4-2(A)  As a result, it was "declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act." N.M.S.A. 1978 § 41-4-2(A).  The NMTCA is also "based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." N.M.S.A. 1978 § 41-4-2(C).

The NMTCA is the "exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim." N.M.S.A. 1978 § 41-4-17(A).  Nothing in N.M.S.A. 1978 § 41-4-17(A) "shall be construed to prohibit any proceedings for mandamus, prohibition, habeas corpus, certiorari, injunction or quo warranto."  N.M.S.A. 1978 § 41-4-17(A)(emphasis added).

A governmental entity of New Mexico may not be sued unless the plaintiff's cause of action fits within one of the exceptions granted to governmental entities and public employees in the

NMTCA. See Begay v. State, 104 N.M. 483, 486, 723 P.2d 252, 255 (Ct. App. 1985), rev'd sub nom. on other grounds by Smialek v. Begay, 104 N.M. 375, 721 P.2d 1306 (1986). If sovereign immunity has been waived under the NMTCA, then "the particular agency that caused the harm may be held liable for the negligent act or omission of the public employee." Id. However, "[c]onsent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act." Begay v. State, 104 N.M. at 486, 487, 723 P.2d at 255, 256 (internal quotations omitted). Thus, if no specific waiver can be found in the NMTCA, a plaintiff's complaint must be dismissed. See id.

A plaintiff may not sue a governmental entity for a damage claim arising out of violations of rights under the New Mexico Constitution unless the NMTCA contains a waiver of immunity. "In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act." Barreras v. N.M. Corr. Dep't, 2003-NMCA-027, ¶ 24, 62 P.3d 770, 776. See Chavez v. City of Albuquerque, 1998-NMCA-004, ¶ 11, 952 P.2d 474, 477 (noting that, a plaintiff cannot seek damages for violations of rights under the New Mexico Constitution unless immunity is waived under the NMTCA); Rubio v. Carlsbad Municipal Sch. Dist., 106 N.M. 446, 449, 744 P.2d 919, 922 (Ct. App. 1987)(holding that no waiver of immunity exists for damages arising out of alleged educational malpractice claim against a school board.); Begay v. State, 104 N.M. at 488, 723 P.2d at 257 (finding that no waiver existed in NMTCA for suit under Article II, § 11 of the New Mexico Constitution and also noting that the type of damages recoverable, if any, were not pertinent to the appeal). Cf. Rubio v. Carlsbad Municipal Sch. Dist., 106 N.M. at 449, 744 P.2d at 922 (holding that

-11-

Article XII, § 1 does not create a contractual relationship for which parents and students may seek relief in the event of breach).

The NMTCA does not bar a claim for injunctive relief.  See El Dorado Utilities, Inc. v. Eldorado Area Water & Sanitation, 2005-NMCA-036, ¶ 28, 109 P.3d 305, 312.  Nothing in N.M.S.A. 1978 § 41-4-17(A) "shall be construed to prohibit any proceedings for mandamus, prohibition, habeas corpus, certiorari, injunction or quo warranto."  N.M.S.A. 1978 § 41-4-17(A)(emphasis added).

"The Declaratory Judgment Act does not have the effect of general consent to be sued; it merely permits parties to sue the state when the state's consent to be sued otherwise exists."  Gill v. Public Employees Retirement Bd., 2004-NMSC-016, ¶ 11, 90 P.3d 491, 496.  The courts in New Mexico are "committed to a strict construction of statutes authorizing suits against the state."  In re Bogert's Will, 64 N.M. 438, 44, 329 P.2d 1023, 1027 (1958).  In Gill v. Public Employees Retirement Board, the plaintiff contended "that New Mexico waived its sovereign immunity by enacting the Declaratory Judgment Act"  Gill v. Public Employees Retirement Bd., 2004-NMSC-016, ¶ 11, 90 P.3d 491, 496.  That did "not persuade" the Supreme Court of New Mexico, because it "s[aw] no reason to revisit that well-established New Mexico law regarding the Declaratory Judgment Act."  Id.

## THE NEW MEXICO CONSTITUTION

Article II, § 18 of the New Mexico Constitution provides: "No person shall be deprived of life, liberty or property without due process of law; nor shall any person be denied equal protection of the laws. Equality of rights under law shall not be denied on account of the sex of any person." N.M. Const. art. II, § 18.  Article XIII, § 1 of the New Mexico Constitution provides: "A uniform

system of free public schools sufficient for the education of, and open to, all the children of school age in the state shall be established and maintained." N.M. Const. art. XII, § 1. In <u>Ellenberg v. New Mexico Military Institute</u>, 478 F.3d 1262, 1270 (10th Cir. 2007), the Tenth Circuit acknowledged that "New Mexico's constitution gives each child the right to a free public education." <u>Id.</u> at 1270 (citing N.M. Const. art. XII, §1 and N.M.S.A. 1978 § 22-1-4).

"[A] constitutional provision is deemed to be self-executing if it supplies the necessary rule by which the right given may be enjoyed and protected or the means by which the duty imposed may be enforced." <u>Gulch Foundation v. Gutierrez</u>, 102 N.M. 667, 671, 699 P.2D 140, 144 (Ct. App. 1985) (citing to <u>State v. Perrault</u>, 34 N.M. 438, 283 P. 902 (1929)). The New Mexico Court of Appeals has recognized that "[i]t has been uniformly held that the legislature has the power to enact statutes providing for reasonable regulation and control of rights granted under constitutional provisions." <u>Gulch Foundation v. Gutierrez</u>, 102 N.M. at 671, 699 P.2d at 144 (internal quotations omitted).

## **ANALYSIS**

The Court believes this is one of those situations where Bell's state constitutional claims began as damages claims and have now evolved to include a claim for injunctive relief. The Court suspects that, after Bell determined that, under the NMTCA, certain claims for damages cannot be sought, he attempted to argue that he was seeking the non-monetary relief. Giving his Complaint a liberal reading, however, the Court concludes that Bell's Complaint does not specify his claim for injunctive relief under the New Mexico Constitution. If Bell is seeking injunctive relief, he needs to plead that relief. APS is entitled to know what injunctive relief Bell seeks. The Court believes that it is appropriate to dismiss Bell's damage claims for violation of the state constitution, without

prejudice to allowing him to rewrite his Complaint, and specify more precisely what injunctive relief he is seeking under the New Mexico Constitution.

**IT IS ORDERED** that the Defendant's Motion to Dismiss Plaintiff's New Mexico Constitution Claims is granted. The Plaintiff's claim under the New Mexico Constitution for damages in the Second Amended Complaint is dismissed. The Plaintiff's claim for injunctive relief under the New Mexico Constitution is without prejudice to him filing an amended complaint clearly setting forth the injunctive relief sought within ten days of the hearing held on October 4, 2007.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Gail S. Stewart
Tara Ford
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Michael L. Carrico
Samantha Adams
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

    *Attorneys for the Defendant*