IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHANSELOR BELL,

        Plaintiff,

vs.                                                                                 No. CIV 06-1137 JB/ACT

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,

        Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on APS' Motion to Dismiss, or in the Alternative

for Summary Judgment on Plaintiffs' Claims for Damages, filed July 18, 2006 (Doc. 82).  The Court

held a hearing on July 28, 2008.  The primary issues are: (i) whether damages for emotional distress,

are available under Section 504 of the Rehabilitation Act; and (ii) whether damages for emotional

distress are available under Title VI for Bell.  The Court has reviewed: (i) J. Lave, M. Sklar, and A.

van der Zee, <u>A Right Without a Remedy: An Analysis of the Decisions by the District Court and</u>

<u>Eleventh Circuit in</u> Sheeley v. MRI Radiology Network, P.A., <u>and the Implication for Disabled</u>

<u>Americans' Ability to Receive Emotional Damages Under the Rehabilitation Act and the Americans</u>

<u>With Disabilities Act</u>, 4 Seton Hall Circuit Rev. 1 (2007)("Lave, Sklar, & van der Zee article"); (ii)

<u>Sheely v. MRI Radiology Network, P.A.</u>, 505 F.3d 1173 (11th Cir. 2007); (iii) the Honorable M.

Christina Armijo, United States District Judge's Memorandum Opinion and Order in <u>N.T. v.</u>

<u>Espanola Public Schools</u>, No. CIV 04-415 MCA/DJS, filed June 21, 2005 (Doc. 55); and (iv) the

Court's Memorandum Opinion and Order in <u>Khan v. Albuquerque Public Schools</u>, No. CIV-03-118

JB/RLP, filed December 31, 2003 (Doc. 39).[1]  For the reasons stated at the hearing, and for reasons stated herein consistent with those already stated, the Court will grant APS' motion for summary judgment on Bell's claims for damages under Section 504 and Title VI.

The Court need not and will not repeat its analysis in Khan v. Albuquerque Public Schools, but will incorporate its discussion of damages for emotional distress therein by reference.  There can be little dispute that damages for emotional distress are not generally available in a contract case. The authors of the Lave, Skar & van der Zee article -- who filed an amicus brief in Sheely v. MRI Radiology Network, P.A., advocate in their article for recognition of emotional damages in Section 504 cases, and are critical of the Court's decision in the Khan v. Albuquerque Public Schools -- repeatedly concede that emotional damages are generally unavailable for contract claims.  See Lave, Sklar & van der Zee article at 9 ("[T]he district court is correct that damages for emotional or mental distress are generally not available for breach of contract.").  The caselaw and commentators support this observation.  The Restatement (Second) of Contracts, in section 353, adopts the general rule prohibiting recovery of non-economic damages in contract cases unless the breach also caused bodily disturbance or the contract of the breach "is of such a kind that serious emotional disturbance was a particularly likely result."  Restatement (Second) of Contracts § 353 (1981).

The courts have developed exceptions to the general rule.  Some courts have looked to the nature of the contract and made exceptions where breach was particularly likely to result in serious emotional disturbance.  "Other courts have looked to the nature of the breach and allowed damages for emotional disturbance on the ground that the breach of contract was reprehensible."  Farnsworth on Contracts § 12.17 at 292-93 (3d ed. 2004).  The question is whether the Supreme Court of the

---

[1]  Because the opinion in Khan v. Albuquerque Public Schools is presently unpublished, the Court will attach it to this opinion as Exhibit A.

United States in <u>Barnes v. Gorman</u>, 536 U.S. 181 (2002), when it stated that it had applied "the contract-law analogy" to define the scope of the available damages, <u>id.</u> at 187, meant to adopt any exception that any court had ever adopted, generally recognized exceptions, or just the general rule, not the exceptions.

The Supreme Court in <u>Barnes v. Gorman</u> stated that "<u>all</u> contract-law rules" may not apply to a Title VI relationship.  536 U.S. at 186 (emphasis in original).  Given the way that the Supreme Court dealt with punitive damages -- creating a general rule despite some cases that recognized punitive damages in contract cases -- the Court is inclined to think that the contract-law analogy is most useful in creating an easily applied general rule -- no damages for emotional distress -- rather than pulling the entire body of contract law, including every case, wherever found, that has discussed contracts and damages for emotional distress together, into the analysis.

Moreover, the contract between the federal government and the State of New Mexico does not apply merely to highschool basketball players, but to a vast array of students.  In <u>Guardians Association v. Civil Service Commission of New York</u>, 463 U.S. 582 (1983), the Supreme Court emphasized the consensual nature of the contract.

> We have also indicated that make whole remedies are not ordinarily appropriate in private actions seeking relief for violations of statutes passed by Congress pursuant to its power under the Spending Clause to place conditions on the grant of federal funds. . . .  This is because the receipt of federal funds under typical Spending Clause legislation is a consensual matter: the State or other grantee weighs the benefits and burdens before accepting the funds and agreeing to comply with the conditions attached to their receipt.

463 U.S. at 596.  The Court doubts that states contemplate, when entering into the funding arrangement with the federal government, that damages for emotional distress will generally not be available, but are available in certain situations.  The more likely expectation is that emotional damages are available when there is a breach or they are not available at all, and that the rule in each

case will not turn on exceptions to the general rule.

Even if, however, the Court were to conclude that some of the major, universally recognized exceptions should be pulled into the federal analysis, the major exceptions do not apply to this case. "Recovery for emotional disturbance will be excluded unless . . . the breach is of such a kind that serious emotional disturbance was a particularly likely result." Restatement (Second) of Contracts § 353, (1981). "[N]umerous cases allowing the recovery of emotional distress damages for breach of contract exists, invariably dealing with what might be called peculiarly sensitive subject matter, or noncommercial undertakings or both." Williston on Contracts § 64.7, at 74-75 (4th ed. 2002). While the Court does not minimize the importance of making his high school basketball team during his senior year to a young man who may have the ability to play Division I basketball, the Court does not think this disappointment is the serious emotional disturbance or peculiarly sensitive subject matter that the case law has generally had in mind.

There are, of course, cases that go further and find damages for emotional distress whenever they would reasonably or foreseeably result from the breach. The Court is reluctant to pull this exception into the federal analysis, because it tends to blur the distinction between tort damages and contract-law damages. The Court believes that, if it adopts this exception, the exception could easily swallow the general rule and undercut the Supreme Court's contract-law analogy, which the Court believes was intended to assist the Court in developing a general rule applicable in all federal cases. In the end, the Court is concerned that recognition of emotional damages is not true and faithful to the Supreme Court's analysis and language.

The Lave, Sklar & van der Zee article is particularly concerned that the recovery of emotional damages is necessary to ensure optimal deterrence. There are at least three responses. First, this argument is a policy concern that should be addressed to Congress, not to the inferior

federal courts.  If Congress wants the courts to award damages for emotional distress, it can so legislate.  A lower court must, however, be faithful to the Supreme Court's analysis and language, setting aside its views of what might be optimal.

Moreover, Congress certainly has not thought it necessary to allow damages for violations of the IDEA, which, being in the educational context, may be more similar to Section 504 cases in the educational context, than contracts for funeral services.  There is no claim for money damages under the IDEA.  See, e.g., Diaz-Fonseca v. Commonwealth of Puerto Rico, 451 F.3d 13, 28 (1st Cir. 2006)("It is black letter law that punitive damages -- indeed money damages of any sort -- are not available in a private suit under the IDEA); Ortega v. Bibb County School District, 397 F.3d 1321, 1325 (11th Cir. 2005)(stating that tort-like damages are not available under the IDEA); Polera v. Bd. of Educ. of Newburgh Enlarged City Dist., 288 F.3d 478, 481 (9th Cir. 2002)(noting that the purpose of the IDEA is to provide educational services, not compensation for personal injury; that the availability of damages would undercut the IDEA's carefully structured procedure for administrative remedies; and that monetary damages are not available under the IDEA); Crocker v. Tennessee Secondary Sch. Athletic Ass'n, 980 F.2d 382, 386-87 (6th Cir. 1992)("We do not find case authority interpreting [the predecessor to the IDEA] to allow an award of general damages for emotional injury or injury to a dignitary interest.").  Second, such damages should not be available unless Congress specifically puts the funding recipient on notice that it may be subject to such damages.  See Barnes v. Gorman, 536 U.S. at 187.

Third, this case indicates, if anything, that the recognition of emotional damages is not necessary to create a proper incentive to sue.  Bell has indicated that, even if the Court grants APS' motion, it will proceed to a week-long trial next month.  Furthermore, in many cases, there may be compensatory damages that survive the contract-law analogy.  In this case, there may be equitable

remedies.  The statute provides for attorneys fees.  It does not appear that the non-existence of damages for emotional distress are the death knell of suits under Section 504.

The Lave, Skar & van der Zee article also criticizes the Court because it likened emotional damages to punitive damages.  Any trial lawyer knows, however, that punitive damages, pain-and-suffering, and emotional-distress damages are the wild cards at trial.  "Damages for emotional disturbance [in breach-of-contract cases] are not ordinarily allowed.  Even if they are foreseeable, they are often particularly difficult to establish and to measure."  Restatement (Second) of Contracts § 353, cmt. a  (1981).  The indeterminate nature of these damages, much like the case of punitive damages, is one of the prevailing characteristics that renders their award in breach-of-contract cases extraordinary.  See Farnsworth On Contracts § 12.8, at 193-94 (3d ed. 2004).

In N.T. v. Espanola Public Schools, there is no indication that the parties brought this Court's decision in Khan v. Albuquerque Public Schools or other district court decisions rejecting emotional distress damages to Judge Armijo's attention.  In any case, Judge Armijo concluded that the available remedies include damages for specific and genuine instances of emotional mental anguish or emotional distress that discrimination or retaliation causes.  See Memorandum Opinion and Order at 27-28.  She did not accept the argument that the contract-law analogies which the Supreme Court articulated in Barnes v. Gorman foreclosed such remedies.  See N.T. v. Espanola Public Schools, Memorandum Opinion and Order at 28.  She concluded that the more appropriate contract-law analogies to apply in her case are those pertaining to contracts for personal well-being.  See id.

Without mentioning the general rule that damages for emotional distress are generally not available in contract cases, Judge Armijo relied on an exception that, when the contractual duty

"is so coupled with matters of mental concern or solicitude, or with the sensibilities of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish, and it is known from the nature of the contract

that such suffering will from its breach, compensatory damages therefor may be recovered."

Flores v. Baca, 117 N.M. 306, 311, 871 P.2d 962, 967 (1994)(quoting Lamm v. Shingleton, 55 S.E.2d 810, 813 (N.C. 1949)).  Judge Armijo stated that, in the context of public education, the purpose of the anti-discrimination statutes is not limited to providing disabled students with services, but to protect students from the harm to their personal well-being caused by being singled out for unfair treatment or in retaliation for protected activities.  See N.T. v. Espanola Public Schools, Memorandum Opinion and Order at 28.  In this respect, she believed that the pertinent provisions of the ADA and the Rehabilitation Act are more analogous to a contract for personal well-being than to a commercial contract, and the students are the intended beneficiaries of such provisions.  See N.T. v. Espanola Public Schools, Memorandum Opinion and Order at 28-29.  Judge Armijo stated that subjecting the school to liability for the loss of that well-being does not offend the Spending Clause principles that the Supreme Court articulated in Barnes v. Gorman.

While the Court agrees with Judge Armijo that Congress is concerned with the well-being of the students, the Court is not convinced that this concern overrides the Supreme Court's concerns in Barnes v. Gorman.  The Supreme Court was particularly concerned that indeterminate damages undermines the general rule that a plaintiff must prove contract damages to a reasonable certainty.  See 536 U.S. at 188 ("Not only is it doubtful that funding recipients would have agreed to exposure to such unorthodox and indeterminate liability; it is doubtful whether they would even have accepted the funding if punitive damages liability was a required condition.").  The Supreme Court's emphasis on this policy reason in Barnes v. Gorman reflects its belief that it is unreasonable to assume a funding recipient would have expected, accepted, or acknowledged the possibility of, and exposure to, a punitive damages award (or multiple awards in multiple cases) that has no

ascertainable limit.  See id. at 188.  Such an interpretation, the Supreme Court suggested, would undermine the basic principle of certainty that is the validating foundation for the law of contract itself.  See id. at 187-88.

For the reasons already stated, the Court believes that it is more sound to adopt the general rule against damages for emotional distress rather than on a case-by-case analysis determining whether an exception applies.  The Supreme Court indicated that "all contract law rules" may not apply to a Title VI relationship, and the Court does not believe that it should adopt exceptions or this particular exception.  First, the exception is difficult to apply consistently, as New Mexico law alone suggests.  See Woodman Accident& Life Ins. Co. v. Bryant, 784 F.2d 1052, 1056-57 (10th Cir. 1986)(New Mexico case)(stating that emotional distress damages are unavailable for breach of insurance contract under New Mexico law); Akutagawa v. Laflin, Pick & Heer, P.A., 2005-NMCA-132, ¶ 21, 126 P.3d 1138, 1144 (rejecting recovery of emotional distress damages in a legal malpractice claim and noting that emotional distress damages in contract actions are recoverable in the limited situation where the specialized nature of the contract naturally contemplated that reasonable care would be taken to avoid the infliction of severe emotional distress).

Second, even if Judge Armijo is correct that Section 504 contractual relationships can be fairly analogized to a contract for personal services, such a construction does not necessarily lead to the conclusion that emotional-distress damages are recoverable in Section 504 cases.  Spending Clause legislation generally has as its object the delivery of services to third-party beneficiaries. Congress designed Section 504 to ensure meaningful access to the programs that a recipient of federal funding offers.  See Alexander v. Choate, 469 U.S. 287, 301 (1985).  Title VI and Section 504 place obligations on recipients of federal funds to refrain from denying program benefits or

-8-

discriminating on the basis of race and disability, respectively.  See 42 U.S.C. § 2000d; 29 U.S.C. § 794a.  There is nothing about a contractual relationship involving the delivery of educational services -- or most other governmental services -- that puts them within the realm of the very specific personal service contracts for which courts have allowed emotional distress damages.  In contrast, in Flores v. Baca, the Supreme Court of New Mexico noted that grief plays an expected component, and is ordinarily associated with, funeral services.  See 117 N.M. at 313-14, 871 P.2d at 969; Restatement (Second) of Contracts § 353 ("Recovery for emotional disturbance unless . . . the contract or the breach is of such kind that serious emotional disturbance was a particularly likely result.")(emphasis added).  There is nothing incongruous about constraining damages recoverable for alleged violations to the value of the services that have allegedly been denied.

It is true that the Supreme Court has recognized that, where legal rights have been invaded and a cause of action is available, generally a federal court may use any available remedy to afford full relief.  The Supreme Court has also recognized, however, that this presumption will yield to a contrary congressional intent or statutory purposes.  The Supreme Court has used this limitation in the Spending Clause context.  The Supreme Court has recognized that, with respect to legislation like Title VI, enacted pursuant to Congress' Spending-Clause power, the presumption must yield to some extent to accommodate the fact that remedies for violations of such legislation are proper only if funding recipients have fair notice that they may be subject to them.  In articulating its concern, the Supreme Court has found it useful to analogize Spending legislation to a contract in which the federal government provides money to recipients in exchange for their promise not to discriminate against third parties.  Thus, the Court must deal sensitively with the more specific limitation discussed in Barnes v. Gorman than the general principles that the Supreme Court has articulated in other contexts.

Finally, the Court has reviewed Bell's evidence for compensatory damages that might survive the Barnes v. Gorman analysis: lost educational opportunity, lost wages, and lost earning capacity.  The Court need not decide whether Barnes v. Gorman applies to lost future wage claims or lost earning capacity claims.  Rather, based on the undisputed facts, the Court does not believe that Bell has presented sufficient evidence showing that he is entitled to other compensatory damages.  Factually, Bell has not met the threshold to establish recoverable damages.  Vague complaints about loss of self esteem are insufficient to support damage claims for lost wages, lost educational opportunity, and lost earning capacity.  Indeed, at the pretrial conference, Bell's counsel effectively conceded that she did not have evidence to secure other compensatory damages that might survive a contract-law analysis:

> STEWART:    Your Honor, this is Gail Stewart, if I may speak to this?  I don't want to give away anything the Court is trying to give us, but the problem here is that I don't have, we have not really, other than pleading for certain other kinds of damages -- for instance lost wages -- we do not have a proof to be able to prove that in the context of this claim that is remaining. . . . So I don't know that, I certainly can't remember everything that Mr. Carrico wrote, but I think if you compare you're going to see that we were arguing for emotional distress damages, because we thought that we had the evidence for emotional distress damages. . . .  In a situation for a student, that is almost impossible, and I don't, I'm not going to waste anybody's time trying to tell the Court that we think we know how we could prove economic damages or compensatory damages in the context of this claim.  We thought the strongest damages, under the allowable jury instructions, would be emotional distress damages.

See Federal Digital Tape Recorder ("FTR") at 9:07:13-9:08:34 (taken August 28, 2008)(Stewart).[2]

Accordingly, the Court will grant summary judgment on the other damages that Bell seeks in this case.

---

[2]The hearing was recorded digitally rather than by written transcript.  The Court is, therefore, unable to provide pinpoint transcript citations to the dialogue at the hearing.  The Court instead cites to the record meter.

**IT IS ORDERED** that APS' Motion to Dismiss, or in the Alternative for Summary Judgment on Plaintiffs' Claims for Damages is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Tara Ford
Pegasus Legal Services
Albuquerque, New Mexico

 -- and --

Gail S. Stewart
Steven Granberg
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Michael L. Carrico
Samantha M. Adams
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

    *Attorneys for the Defendant*