## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CHANSELOR BELL,

       Plaintiff,

vs.                                                                          No. CIV 06-1137 JB/ACT

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Award of Attorney's Fees Pursuant to IDEA and for Allowable Costs and Memorandum in Support, filed December 12, 2008 (Doc. 207)("Motion"). The Court held a hearing on February 26, 2009. The primary issues are whether the Court should award Plaintiff Chanselor Bell attorneys' fees because of the Court's holding that Defendant Albuquerque Public Schools ("APS") denied Bell a free and appropriate public education ("FAPE") and, if so, the amount of any award. These issues in turn depend on: (i) whether APS made a settlement offer to Bell more favorable than the relief Bell finally obtained; (ii) whether Bell unnecessarily prolonged the resolution of this litigation; (iii) whether APS prevailed on most of the relevant issues raised in this lawsuit; and (iv) whether some of the fees and costs Bell seeks are not recoverable. Because the Court concludes that APS' settlement offer was not superior to the relief the Court ordered and because Bell did not unnecessarily prolong the outcome of this case, the Court will award Bell fees. A reduction in the amount Bell requests is necessary, however, because APS prevailed on a number of issues and because some of the fees Bell requests are not recoverable. Accordingly, the Court will award Bell $79,545.49 in attorneys' fees.

Although Bell requests costs as well, motions to tax costs should first be filed with the Clerk's Office.  The Court will therefore refer that portion of Bell's motion to the Clerk's Office for the District of New Mexico.

## FACTUAL AND PROCEDURAL BACKGROUND

Until his graduation in May 2006, Bell was a student at Manzano High School in Albuquerque, New Mexico.  See Memorandum Opinion and Order at 2, entered November 28, 2008 (Doc. 205)("MOO").  APS labeled Bell as a student with mental retardation in 1996 and 1999, and then again in 2002, his first year of high school.  See id.  In March of 2005, after a reevaluation, APS determined that Bell qualified for receipt of special education because of a specific learning disability, but not because of mental retardation.  See id. at 3.  During his senior year, in December 2005, Bell and his family brought a pro se due-process complaint against APS for violations of the Individuals with Disabilities Education Act ("IDEA"), with Bell's mother, Gina Bell, acting as Bell's attorney-in-fact.  See id. at 6.  By March 2006, two attorneys, Gail Stewart and Tara Ford, were representing Bell, and Bell filed an amended complaint.  See id.

On March 20, 2006, in response to an oral settlement offer from APS, Bell sent APS a rejection and counteroffer, which included a demand for $175,000.00 for Bell and his counsel and for various forms of specific relief, most of which were aimed at effecting systematic change.  See Letter from Gail Stewart to Michael Carrico at 1-3 (dated March 20, 2006)(Doc. 213-7).  On March 21, 2006, APS sent a letter to Ms. Stewart offering to settle all Bell's claims.  See Exhibit A to Response, Letter from Michael L. Carrico to Gail Stewart at 1-2 (dated March 21, 2006)(Doc. 213-2)("Settlement Offer").  Bell did not accept the offer.

At the administrative level, in front of a due-process hearing offer ("DPHO"), Bell raised a number of claims.  The DPHO ruled against Bell in June 2006, finding that APS' actions did not

constitute a denial of FAPE and denying the remainder of Bell's claims.  See MOO at 7-8 (discussing DPHO's ruling).  Bell filed a Complaint against APS in state court on July 26, 2006, and APS removed the action to federal court.  See MOO at 8-9.  As part of his case against APS, Bell appealed the DPHO's decision.  See id. at 9.

On May 17, 2007, before formal discovery began, Bell offered to settle all his claims for $150,000.00 for Bell and his attorneys.  See Exhibit G to Response, Letter from Tara Ford to Michael Carrico and Samantha Adams at 1-2 (dated May 17, 2007)(Doc. 213-8)("May 17, 2007 Letter").  Later, in advance of a settlement conference, Bell offered to settle for $230,000.00. See Exhibit H to Response, Letter from Gail Stewart and Tara Ford to Michael Carrico and Samantha Adams at 1-2 (dated January 15, 2008)(Doc. 213-9)("January 15 Letter").  Neither offer ended in a settlement.

On March 26, 2008, the Court held that Bell's IDEA claims based on events occurring before December 27, 2003 were time-barred.  See Memorandum Opinion and Order at 29-30, 43, entered March 26, 2008 (Doc. 117)("March 26 MOO").  On May 20, 2008, the Court held a hearing whether to supplement the administrative record from the due-process hearing with additional evidence. Some of the evidence presented at that hearing was added to the administrative record.  See MOO at 39-40.  In addition to IDEA claims, Bell raised a number of non-IDEA claims against APS. Among those claims were equal-protection, due-process, and Title VI claims, which, while not IDEA claims, were related to his IDEA claims and which the Court dismissed on May 6, 2008. See MOO at 9. Other non-IDEA claims, for discrimination and retaliation, were tried to a jury, which found for APS.  See Special Verdict Form at 1-4, filed October 3, 2008 (Doc. 198).

After the trial, the Court ruled on Bell's appeal of his IDEA claims.  Bell raised five issues on appeal, contending that on each issue that the DPHO erroneously concluded that APS had denied

Bell FAPE.  See MOO at 1-2.  The Court affirmed in part and reversed in part the DPHO.  The Court found against Bell on one issue.  See id. at 53.  On the other issues the Court found for Bell and concluded that Bell was denied a FAPE.  See id. at 55-57 (finding that graduation did not moot claims); id. at 58 (finding that APS denied Bell a FAPE on three grounds).  The Court ordered APS to provide compensatory education to remedy the deprivation of a FAPE.  See id. at 59-60.

Bell now moves the Court for an award of attorneys' fees and costs pursuant to the IDEA.  Contending that he is the prevailing party on his IDEA claims, Bell seeks $114,454.27.00 in attorneys' fees and $15,875.35.00 in costs.  See Motion at 1.  Bell notes that his request for costs includes expert fees that cannot be recovered under current IDEA case law, but which he believes Congress may provide for in an IDEA amendment that might be passed while his motion is pending.  See Motion at 1 n.1.  Bell argues, however, that regardless what new legislation Congress might pass, the Court may in its discretion award him his costs for experts.  See id. at 12-13.

In response, APS does not dispute Bell's assertion that he prevailed on the IDEA claims, but rather argues that any award should be eliminated or reduced for a variety of reasons.  First, APS contends that the Court should award nothing because Bell rejected a settlement offer more favorable than the relief Bell ultimately obtained from the Court.  See APS' Response to Plaintiff's Motion for Award of Attorneys Fees Pursuant to IDEA and for Allowable Costs at 1-7, filed December 29, 2008 (Doc. 213)("Response").  Second, APS asserts that an award is not appropriate because Bell unnecessarily protracted the litigation.  See id. at 7-11.  APS also argues that, in the event the Court awards fees and costs, the Court should reduce any award because APS prevailed on the majority of issues in this case, see id. at 11-17, and because certain fees and costs that Bell requests are not recoverable, see id. at 17-24.

In reply, Bell contends that APS' settlement offer was not more favorable that the relief he

obtained and that, in any event, he was substantially justified in rejecting the offer.  See Plaintiff's Response in Support of Plaintiff's Motion for Award of Attorney Fees Pursuant to IDEA and for Allowable Costs at 2-9, filed January 19, 2009 (Doc. 218)("Reply").  Next, Bell argues that APS protracted the litigation.  See id. at 9-12.  Turning to APS' arguments for reduction rather than elimination of fees, Bell first contends that APS' argument that Bell achieved only limited success in this case involves an improper, rigidly mathematical approach which ignores the reality that the Court finding Bell was denied a FAPE is "the most significant of successes possible under the IDEA."  Id. at 12-13 (internal quotation marks omitted).  Finally, Bell maintains that APS' various challenges to specific fee or costs requests are incorrect, and that all his fees and costs are recoverable.  See id. at 14-17.

APS has also filed a surreply.  In its surreply, APS concentrates on its arguments for eliminating Bell's requested award in it entirety.  APS contends that its offer was not ambiguous and was superior to the relief Bell obtained.  See APS' Surreply in Response to Plaintiff's Motion for Attorney's Fees and Costs at 1-9, filed February 6, 2009 (Doc. 225)("Surreply").  APS also argues that Bell discontinued efforts to reach a settlement.  See id. at 11-13.

At the hearing, Ms. Stewart initially disagreed with applying Hensley v. Eckerhart, 461 U.S. 424 (1983), which calls for fee reductions based upon degree of success, to IDEA cases.  See Transcript of Hearing at 7:1-7:14 (taken February 26, 2009)(Court & Stewart)("Tr.").[1]  Ms. Stewart emphasized that it was important to be mindful of the struggles children with disabilities and their parents faced, and that genuine relief in such cases can be simple things that are nonetheless important to the parties.  See id. at 8:3-9:13 (Stewart).  Ms. Stewart agreed, however, that cases

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain different page and/or line numbers.

involving 42 U.S.C. §§ 1983 and 1988 provided guidance for IDEA fee awards, but asked that the Court not apply a rigid mathematical formula of counting up issues and determining on how many Bell prevailed and on how many Bell did not without a more nuanced inquiry.  See id. at 9:14-12:18 (Court & Stewart).  Ms. Stewart admitted that her decision to reduce her billing fifty percent for entries related to both IDEA and discrimination claims was essentially arbitrary, because she had not been able to conduct a complete review of the precise work done for each individual entry, but that overall fifty percent was, in her estimation, an appropriate and fair split.  See id. at 13:20-14:13 (Court & Stewart).

Michael Caricco, APS' attorney, stressed his belief that Bell was changing his story to emphasize the issues on which he prevailed on appeal even though those issues were not, in Mr. Carrico's opinion, something Bell pursued during earlier discussions with APS.  See id. at 14:22-15:22 (Caricco).  Mr. Caricco did not agree with Ms. Stewart's choice of a fifty-percent reduction for entries related to both IDEA and discrimination issues, and contended that the Court needed to look at the parties' focus, in which discrimination was the dominant issue.  See id. at. 27:13-29:15 (Court & Caricco).  He did not have a better overall percentage to offer, although he ventured that ten percent on the discovery items would be more appropriate.  See id. at 29:21-30:7.  Ms. Stewart countered that there was significant discovery involving the IDEA issues.  See id. at 41:12-42:1 (Stewart).

## LAW REGARDING ATTORNEYS' FEES AWARDS UNDER IDEA

Parties generally pay their own attorneys' fees under the American rule.  Congress has enacted several fee-shifting statutes, however, that allow winning parties to recover certain fees and costs from their opponents.  IDEA contains such a provision.  "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the

costs . . . to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B) & 1415(i)(3)(B)(I).

## 1.    **IDEA Fee Awards.**

Fee awards under the IDEA are subject to certain limitations.  Attorneys' fees may not be awarded "for services performed subsequent to the time of a written offer of settlement" that is rejected if "the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement."  20 U.S.C. § 1415(i)(3)(D)(i) & 1415(i)(3)(D)(i)(III).  Fees may nonetheless be awarded, however, if the parents were "substantially justified in rejecting the settlement offer."  Id. § 1415(i)(3)(E).  Circuit courts have mentioned these provisions in passing when discussing other issues under the IDEA, but no appellate court has construed the language of either provision.

Additionally, fee awards may be reduced in certain circumstances.  Reduction is required if "the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy."  Id.  § 1415(i)(3)(F)(i).  This section does not mandate that no fees should be awarded, however, but rather directs that "the court shall reduce, accordingly, the amount of the attorneys' fees awarded under this section."  Id. § 1415(i)(3)(F).

## 2.    **Hensley v. Eckerhart.**

IDEA allows for "reasonable attorneys' fees."  20 U.S.C. § 1415(i)(3)(B).  Awarding reasonable attorneys' fees, in the 42 U.S.C. § 1988 context, has been held to involve considering the degree of the litigant's success as a factor in determining the size of the award.  See  Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983).  Recognizing the identical language both statutes contain, most circuits have held that the rule laid down in Hensley v. Eckerhart applies to fee awards under the IDEA.  See, e.g., Aguirre v. Los Angeles Unified School Dist., 461 F.3d 1114, 1119, 1121 (9th

Cir. 2006)(noting that at least seven other circuits have held that the degree of success standard applies in the IDEA context and joining those circuits); Linda T. ex rel. William A. v. Rice Lake Area School Dist., 417 F.3d 704, 708 (7th Cir. 2005)(applying Hensley v. Eckerhart).   Most importantly for this Court, however, the United States Court of Appeals for the Tenth Circuit has applied the degree of success test from Hensley v. Eckerhart in an IDEA case.   See Urban by Urban v. Jefferson County School Dist. R-1, 89 F.3d 720, 729 (10th Cir. 1996).   Recently, the Tenth Circuit reaffirmed this holding and upheld a district court's applying the Hensley v. Eckerhart factors when considering an IDEA fee award.   See Miller v. Bd. of Educ. of Albuquerque Public Schools, 2009 WL 1297843 at *12-13 (10th Cir. 2009).

Justice Powell's opinion in Hensley v. Eckerhart leaves much of the details about awarding fees to the district court's discretion, but holds that "the most critical factor is the degree of success obtained." Id. at 436.   When a plaintiff has been only partially successful, a court must address two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" Id. at 434.   In answering the first question, a court must, in calculating fees, determine whether a "plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded." Id.   "[I]f a plaintiff fails to prevail on claims 'unrelated' to those on which he or she succeeds, work on the unrelated unsuccessful claims cannot be compensated." Ramos v. Lamm, 713 F.2d 546, 556 (10th Cir. 1983), overruled on other grounds by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711 (1987).   The Supreme Court has directed courts to review fee awards in light of certain basic principles:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award

may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . . If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.

Id. at 435-36.

## ANALYSIS

APS does not dispute that Bell is a prevailing party because of the Court's favorable ruling on his appeal of the DPHO's decision. Instead, APS argues that Bell rejected a settlement offer more favorable than the relief the Court ordered on Bell's appeal and that Bell unnecessarily prolonged litigation in this matter, making Bell ineligible for a fee award. Additionally, APS contends that the Court should reduce any award because APS prevailed on many issues. APS also challenges the reasonableness of various specific items in Bell's request for fees. The Court concludes that Bell neither rejected a more favorable settlement offer nor unnecessarily delayed the resolution of this case. The Court will therefore award Bell fees. And after reviewing the fees Bell seeks, the Court believes that most of the fees are reasonable, but that the award should be reduced somewhat to account for the degree of Bell's success and to eliminate certain items that are not recoverable.[2] Bell also requests costs, but such requests should be reviewed in the first instance at the Clerk's Office, so the Court will refer that aspect of the motion to the Clerk's Office.

## I.    THE COURT WILL AWARD BELL FEES AND COSTS.

APS makes two attacks against the Court awarding Bell any fees or costs at all: (i) that Bell

---

[2] Although the merits of the Court's IDEA ruling in favor of Bell is on appeal to the Tenth Circuit, see Defendant Albuquerque Public School's Notice of Appeal, filed December 24, 2008 (Doc. 210), the Court retains jurisdiction over the collateral issue of attorneys' fees and costs, see Bell v. Board of County Comm'rs of Jefferson County, 451 F.3d 1097, 1101 n.2 (10th Cir. 2006).

rejected an offer more favorable than the relief the Court ultimately gave him; and (ii) that Bell dragged the litigation out without justification.  Neither line of reasoning persuades the Court that it should not award Bell fees and costs.  The Court retains the power to grant such an award and believes that one is appropriate here.

> ### A.   APS' SETTLEMENT OFFER TO BELL WAS NOT AS FAVORABLE AS THE RELIEF THE COURT ORDERED.

An exception to the IDEA's grant of authority to award fees and costs provides:

> Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if--

>> **(I)** the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;

>> **(II)** the offer is not accepted within 10 days; and

>> **(III)** the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

20 U.S.C. § 1415(i)(3)(D)(i).  There is no dispute that the first two requirements of this exception are met here.  APS timely proposed a settlement offer to Bell, which Bell rejected.  What is disputed is whether that offer was more favorable that the relief the Court ordered.  Additionally, Bell notes that the exception on which APS relies also has an exception.  "Notwithstanding subparagraph (D), an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer."  20 U.S.C. § 1415(i)(3)(E).  Bell urges the Court to find that his rejection of APS' offer falls under this subparagraph because APS's offer was vague and failed to address several of Bell's concerns.  Because the Court finds that the relief it ordered is superior to APS' offer, the Court will not address this latter argument Bell

raises.

Determining whether APS' earlier offer was more favorable than the relief this Court ordered requires a careful comparison of the two.  First, APS' offer letter, in its entirety, reads:

Dear Ms. Stewart:

Pursuant to 20 U.S.C. §1415 and Fed. R. Civ. P. 68, APS offers to resolve the Bells' claims against APS as follows:

- APS will pay $15,000.00 to Chanselor Bell to be used for educational purposes.  APS is agreeable to placing such funds in a trust, interest bearing account, or other similar arrangements.

- Mrs. Bell may participate in the APS Special Education Parent Advisory Committee, wherein she may seek to have the district wide concerns heard.

- Mrs. Bell may participate with the Special Education Administration with regards to the development of educational programs to assist parents in understanding the IEP process, including the development of an informational video.

- Manzano High School representatives, including Tim Whalen and Greg Brown, will conduct a review with Dr. Bicknell of the APS EOS office to investigate Mrs. Bell's concerns regarding racial discrimination, with a particular emphasis on a review of the basketball program at Manzano High School.

- APS will distribute a memorandum to all of Chanselor Bell's teachers identifying his IEP modifications, and directing the teachers to implement such modifications, and will implement a weekly report wherein the teachers sign off that they have implemented Chanselor's IEP modifications.

- APS will implement a five-day review process for Chanselor or Mrs. Bell prior to issuance of prior written notice.

- APS will provide Chanselor with one year of compensatory education, which compensatory education services must fall within the scope of elementary and or secondary school education under New Mexico law.  Such compensatory education services would be developed and implemented through the IEP team process, which IEP team would include Chanselor Bell (or his designee).  Such services

may include, but are not limited to, educational services designed to help Chanselor Bell obtain a high school diploma.

• APS will provide Chanselor Bell with summer school classes, free of charge, in math, English, science, or other core subject areas.

In consideration for the above, Chanselor Bell must execute a full release of all claims against APS, the Board of Education of APS, its employees and agents, including but not limited to, any and all claims for damages sounding in tort, pursuant to 42 U.S.C. § 1983, the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act, the New Mexico Human Rights Act, Title IV, VII or IX, or any other statutory or common law cause of action for personal physical injury, psychological injury, compensatory or punitive damages, litigation costs or attorney fees, pain and suffering, emotional distress, medical or related expenses of any nature, or any other claims or demands.

This offer shall remain open until April 7, 2006.

Sincerely,
/s/ Michael Carrico
Michael L. Carrico

Exhibit A to Response, Letter from Michael L. Carrico to Gail Stewart at 1-2 (dated March 21, 2006)(Doc. 213-2)("Settlement Offer").

In deciding Bell's appeal from his administrative hearing, the Court concluded that Bell had been denied FAPE and that APS had mislabeled Bell.  See MOO at 58, 60.  The Court ordered a remedy as follows:

APS must pay for a consultant or consultants to figure out an appropriate scheme to remedy [the] fifteen-month deficiency [in FAPE], and then tutor him or secure education services that implement that remedial plan.  The Court will order APS to pay for outside tutoring and educational assistance that is consistent with Bell's final IEP, focusing on language and mathematics skills to prepare him for post-secondary education, for fifteen hours per week -- the amount of special-education time provided under Bell's IEP.  The assistance shall continue for fifteen months, the amount of time between the beginning of the statutory period and the March 2005 reevaluation.  Alternatively, the Court will order APS to pay for an outside consultant to formulate a plan to provide remedial education for Bell that would last for approximately fifteen months, the amount of time between the beginning of the statutory period and the March 2005 reevaluation.  APS will then

-12-

> pay for fifteen months of remedial tutoring that is consistent with the plan.  The plan should endeavor, as much as possible, to put Bell in a situation similar to where he would be if he had received fifteen months of educational services from APS that was focused on his mathematics needs and needs as a student with a specific learning disability in receptive and expressive language skills.
>
> APS may choose which alternative to take, with an eye toward providing Bell with a remedial education that makes Bell able to start college on a level with other high school graduates.  APS should work with the Bells to arrive at the most efficacious remedy.  If APS and Bell cannot agree on what alternative to use, however, then APS must use the first alternative.

MOO at 59-60 (citation omitted).

Comparing the relief the Court ordered with the settlement offer, the Court concludes that APS' offer was not more favorable than the Court's order.  The core of both APS' offer and the Court's order is compensatory education.  APS calculates the Court as ordering 975 hours of compensatory education, based upon the Court ordering fifteen hours a week of compensatory education for fifteen months.[3]  APS calculates its offer as involving 1,395 hours of compensatory education.  In reaching this figure, APS interprets one year of compensatory education as involving 180 school days at six hours per day, for a total of 1,080 hours.  For summer school, APS calculates that, because it offered at least three possible subjects, Bell could receive three classes at three-and-half hours each for thirty days, a total of 315 hours.

After reviewing the terms of APS' offer, the Court agrees with Bell that reading the offer to provide for 1,080 hours of compensatory education is an exaggerated figure.  APS offers "one year of compensatory education," but, in the letter itself, gives little indication what that one year will involve.  Settlement Offer at 2.  APS now contends that it offered a full school year of six hours a day.  At the time of the offer, however, Bell's IEP -- the same IEP to which the Court pegged the

---

[3] As APS does the math: "15 hours/week x 52 weeks/year x 1.25 years=975 hours." Response at 3.

duration of its order of compensatory education -- called for fifteen hours of special education services a week.  Unlike the Court's order, however, APS' offer provided only for one year of compensatory education, while the Court's order is to remedy fifteen months of Bell being denied FAPE.  Moreover, under APS' offer, an IEP team was to determine the contours of the education and it is not clear how many hours the team might have decided was appropriate for "one year of compensatory education."  In this context, it is difficult to read the offer, especially without more, as offering a full school year of education.  A more reasonable reading of the offer would be to calculate the offer as being somewhat less than the number of hours the Court's order provides, given the discrepancy between the year in the offer and the more than a year in the order.

In its surreply, APS contends that a year of compensatory education is a common term, one used in other cases and by Bell's counsel, and that state law defines a year of school as 1,080 hours of instruction.  Both arguments are off the mark.  That "a year of compensatory education" is a common term does not, without more, translate to a full academic year.  None of the sources APS cites defines a year of education as necessarily equaling a full academic year.  How much time is contained in that phrase is uncertain, and given that compensatory education is by definition education to make up for particular shortcomings, it is likely that most uses of the term treat it as context-specific.  Nor does New Mexico law's defining a year of education as 1,080 hours change the result.  APS offered a year of compensatory education, not a normal school year's worth of education.  In the complex context of special education, where eligible students receive different amount of special education based upon their needs, the Court cannot read APS' offer as unambiguously offering 1,080 hours of compensatory education.

Additionally, the Court agrees with Bell that there are other deficiencies beyond sheer hours that make the Court's compensatory education order superior.  The offered compensatory education

-14-

fails to address Bell's concerns about mislabeling and his IEP team.  While APS contends that the Court has at least implicitly found Bell's final IEP to meet his needs, what the Court held was that, "[w]hile Bell is apparently not completely satisfied with his final IEP, he has not demonstrated a better plan."  MOO at 59.  Accordingly, the Court required the compensatory education it ordered to be consistent with that last IEP, but also required that an outside consultant be hired to help develop a remedial plan to implement the order.  See id.  Because the offer fails to acknowledge some of the problems that the Court found, the Court concludes that APS' compensatory education offer is qualitatively as well as quantitatively less than the Court's order.

With respect to the summer school hours, APS' mathematical calculation is right, but its premises are wrong.  APS supports its calculations with an affidavit from Gerald Gustafon, a program-support specialist at APS when Bell was enrolled at Manzano High School.  Gustafon states that a student may enroll in only two classes during summer school.  See Exhibit B to Response, Affidavit of Gerald (Gus) Gustafon ¶ 14, at 2 (executed December 23, 2008)(Doc. 213-3). APS' calculations involve three classes.  Two classes a day, at three-and-half hours each class for thirty days, would be a total of 210 hours.  210 hours on top of the year of compensatory education would essentially make the offer, in pure number of hours, equivalent to the Court's order of fifteen months of education.  As the Court has noted, however, an hour under the Court's order is qualitatively superior in at least some degree to the hours APS offered.  Accordingly, with respect to compensatory education as a whole, the Court's order is superior to APS' offer.

The second component of APS' offer is "$15,000.00 to Chanselor Bell to be used for educational purposes."  Settlement Offer at 1.  As APS points out, the Court awarded no damages or any other lump sum to Bell.  Bell counters that the offer fails to address attorneys' fees, for which the Court's order now makes Bell eligible, and was premised upon Bell releasing all his claims,

including his non-IDEA claims.

At the time of the offer, Bell's attorneys' fees were less than $5,000.00, and APS suggests that the $15,000.00 easily covers that amount.  APS' offer is conditioned, however, on the $15,000.00 being used for "educational purposes," so the offer fails to address the fees issue. Assuming that, for purposes of valuing the offer, the $15,000.00 can be treated as a setoff to attorneys' fees, the Court still does not believe that the offer is superior to the Court's order.  Bell points out that the settlement would have required Bell to relinquish all his claims, including his discrimination claims.  These claims were ultimately unsuccessful, but some of his claims survived summary judgment and were tried to a jury.  At the time of the offer, Bell's right to pursue those claims was an asset to him and waiving his rights to them would require payment.  Taking the pre-trial value of his discrimination claims and a little under $5,000.00 in then-accumulated attorney's fees together, their value may have been near or in excess of the $15,000.00 promised in APS' offer.

This reasoning, however, assumes that the Court should be considering the claims according to their value at the time of the settlement.  If the Court were to value the claims according to their present value, with their ultimate lack of success at trial established, those claims would effectively have no value.  On the other hand, to be consistent, the Court would also have to value Bell's accrued attorneys' fees at the later date.  And using this later date would mean that Bell's attorneys' fees were much greater than the $15,000.00 offered.  Thus, if the Court considers the relative values at pre-trial, then the Court's order and APS' settlement offer are roughly equal.  If, however, the Court were to look at the relative values from the present, then the Court's order is more favorable than APS' settlement offer.  The Court does not need to decide which approach is correct because either way the result is the same.  Considered alongside the other aspects of the Court's order and APS's offer, the Court's ordered relief is ultimately superior under either approach.

-16-

The final aspect of APS' offer is a variety of forms of what APS terms injunctive relief, such as various participation and review rights for Bell and his mother.  APS contends that Bell received no similar relief under the Court's order.  By pursuing his case, however, Bell has secured a court determination that he was denied a FAPE and that APS mislabeled him as mentally retarded.  While the Court did not order APS to perform any particular acts as a result of these findings, the Court believes that these findings serve as an appropriate point of comparison for the injunctive relief APS offered.  As part of denying Bell's requests for equitable relief, the Court noted that its opinion "makes it clear that . . . Bell was mislabeled for over a year."  MOO at 60.  It is difficult to compare the value of the injunctive relief APS offered with the Court's holding that Bell was mislabeled and denied a FAPE, although, as Bell notes, at least one court has stated that a finding that a student was denied a FAPE "is the most significant of successes possible under the [IDEA]."  Park v. Anaheim Union High Sch. Dist., 464 F.3d 1025, 1036 (9th Cir. 2006).  And as the Court noted at the hearing, vindication of Bell's view that he was erroneously labeled as mentally retarded is also of "real value."  Tr. at 3:2 (Court).  At a minimum, it seems that the answer is equivocal.  At best for APS, the scales do not tilt much either way on this last factor.

Putting these various factors together reveals that APS' offer and the Court's order are quite close, but that the relief the Court ordered has the edge.  On compensatory education, the Court's order is superior.  On damages, APS offered $15,000.00, but when attorneys' fees and the value of relinquished claims are taken into account, this sum is at best equal to what Bell received under the Court's order.  Finally, the injunctive and declaratory elements are more or less in equipose.  Both sets of relief are thus largely equal in value, if different in nature, but the Court has ordered superior compensatory education.  To the extent that APS' offer might be slightly better on the non-compensatory education factors, the Court cannot say that they make up the difference between the

-17-

two.  Assessing the relative weight to give to the Court's order and to APS' offer involves the proverbial comparison of apples and oranges, with some bananas and pineapples thrown in for good measure.  Careful analysis, however, reveals that the Court's order is superior to the settlement offer.  In any such comparison, there is bound to be lingering ambiguity, but the Court is satisfied that APS' settlement offer is not equal to the relief that the Court ordered.  At best for APS, it would not be unreasonable to consider the two more or less similar in value, but the Court must find that its order is not more favorable than the offer.  The Court cannot reasonably make that finding.  Accordingly, 20 U.S.C. § 1415(i)(3)(D)(i) does not apply here.  The Court retains the power to award attorneys' fees and costs under the IDEA.

## B.   BELL DID NOT UNREASONABLY PROLONG THE RESOLUTION OF THE LITIGATION.

APS' second wholesale challenge to a fee award is that Bell prolonged this litigation unnecessarily.  20 U.S.C. § 1415(i)(3)(F) requires the Court to reduce a fee award if "the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy."  Id.  § 1415(i)(3)(F)(i).  This section does not mandate that no fees should be awarded, but rather directs that "the court shall reduce, accordingly, the amount of the attorneys' fees awarded under this section."  Id.  § 1415(i)(3)(F).  The Court does not see a sound basis for either eliminating or reducing the award under this provision.

APS contends that Bell prolonged the litigation over the IDEA claims because Bell tied settlement of those claims to resolution of Bell's discrimination and retaliation claims, and because the amounts Bell demanded for settlement were unreasonable.  According to APS, Bell's settlement offers did not mention compensatory education and were largely focused on his non-IDEA claims.  Citing Jason D v. Houston Indep. School Dist., 158 F.3d 205, 211-12 (5th Cir. 1998), APS contends

-18-

that Bell adopted a litigation posture that effectively precluded settlement, thus unnecessarily dragging out the case.  Bell argues that he did not unduly prolong the litigation and that his posture in the case was the result of APS' intransigence on various issues.

While Jason D v. Houston Indep. School Dist. and other cases from the Fifth Circuit on which it relies stand for the proposition that a refusal to settle can indicate unduly prolonging litigation, the Court does not believe that refusing to settle, without more, can support finding that a plaintiff unnecessarily prolonged a case.  It is important to focus on the circumstances of any refusal to settle.  A defendant cannot make an offer that is deeply wanting and then, when the inevitable rejection comes, use that rejection as a shield against any request for an award of attorneys' fees down the road.  Unfortunately, other than stating the basic proposition that refusal to settle can justify finding delay, Jason D v. Houston Indep. School Dist. provides little guidance on the issue.

On the facts here, however, Bell's refusal to accept a settlement did not unnecessarily prolong the litigation.  It makes sense to focus first on the time of APS' initial offer to settle and determine whether Bell's rejection was unreasonable.  Given that the settlement offer failed to address Bell's concerns about mislabeling, was vague about what compensatory education would entail and left much of the determination of that education in the hands of an IEP team, did not address attorneys' fees, and required him to relinquish all other claims against APS, including his discrimination claims, the Court cannot view Bell's decision as unreasonable.  He ultimately did not prevail on many of the issues he pursued, but the Court sees no reason to believe that his pursuit was irrational or in bad faith.  A number of his discrimination and retaliation claims survived summary judgment and went to trial.  The Court cannot conclude that Bell unduly prolonged litigation by refusing APS' settlement offer.

Nor does the Court see other grounds to reach such a conclusion.  In particular, APS stresses that Bell was focused on his discrimination-based claims and that, had Bell sought to negotiate compensatory education, this litigation could have been ended much earlier.  Bell's theory, although ultimately unsuccessful, was that the discrimination and IDEA issues were intertwined.  The Court does not believe that Bell was wrong to pursue his discrimination claims or that they were frivolous.  After extensive motion practice in federal court, some of the claims were dismissed.  Ultimately, a jury resolved the remainder of the claims.  The Court sees nothing unusual about how this case has progressed.  And while APS argues that Bell did not mention compensatory education as a remedy he sought until later, at least as early as May 17, 2007, before formal discovery in federal court, there is documentary evidence that Bell was concerned about the misidentification and cited Draper v. Atlanta Independent School System, 2007 U.S. Dist. LEXIS 26559 (N.D. Ga.), regarding an award of compensatory education under IDEA for misidentification.  See May 17, 2007 Letter at 1.

Bell's settlement demands were also not exorbitant.  Although APS mentions that Bell stated at a deposition he had suffered a million dollars in damages, the formal offers from Bell's attorneys were more modest.  As litigation wore on, Bell's request reached a high mark of $230,000.00, inclusive of some $128,000.00 in attorneys' fees.  See January 15, 2008 Letter at 1.  Given the complexity of this case, the length of time involved, and the potential value of a verdict against APS -- which is always a distinct possibility in any case that it is viable enough to withstand summary judgment -- the Court cannot call these requests unreasonable enough to amount to prolonging litigation.

Even if Bell had decided to separate his IDEA claims from his other claims and then to settle the IDEA claims, that settlement would not have ended the discrimination litigation, which consumed a substantial amount of time in this case.  Because Bell did not unreasonably prolong

-20-

litigation by rejecting APS' initial settlement offer, there would still have been an IDEA hearing. A new settlement after the hearing would have cut off the appeal to federal court, but that appeal was where Bell ultimately prevailed.  Given that APS was primarily successful at the administrative level, it is doubtful that Bell, post-hearing, would have secured a settlement from APS by foregoing his right to appeal to federal court that was nearly as favorable as what he received from appealing and following through on the IDEA litigation.  In sum, the Court does not believe that Bell's actions and his attorneys' actions warrant a finding that they unduly prolonged litigation in this case.  While the Court will reduce the award, it will do so because of other reasons and not because Bell unduly prolonged litigation.

## II.     THE COURT WILL REDUCE THE FEE AWARD TO ACCOUNT FOR BELL'S LIMITED SUCCESS AND OTHER FEES THAT SHOULD NOT BE RECOUPED.

Because the Court determines that it can award Bell fees, the Court next turns to APS' arguments that the Court should reduce any fee award because Bell prevailed on only some issues, while APS prevailed on others and because certain fees included in Bell's request are not recoverable.  The Court will reduce the award.  As an initial matter, the Court concludes that Ms. Stewart's general approach of reducing by fifty percent the fee requests for work related to both discrimination and IDEA issues is appropriate.  In general, APS prevailed on a number of issues in the litigation, requiring a reduction in the award, and APS also has valid challenges to a number of individual line items in the fee requests.  APS also challenges the reasonableness of Bell's request for costs, but because a motion to tax costs should first be submitted to the Clerk's Office, the Court will refer that portion of Bell's request to the Clerk's Office.

**A.   THE COURT WILL ACCEPT MS. STEWART'S GENERAL FIFTY-PERCENT REDUCTION FOR FEE REQUESTS RELATED TO BOTH IDEA AND NON-IDEA ISSUES.**

Many of the specific fee requests in Ms. Stewart's time logs relate to both IDEA and non-IDEA issues.  For those items, Ms. Stewart reduced the request fifty percent.  APS disagrees with this approach, but, as a general matter did not propose an alternative percentage, other than a ninety-percent reduction for discovery issues.  Having seen the trial and the various motions and hearings throughout this case, the Court believes that Ms. Stewart's fifty-percent approach is acceptable.  Had Ms. Stewart not undertaken that reduction on her own, the Court would likely have reached a similar figure nonetheless.  On some individual items, fifty percent might be overinclusive or underinclusive.  Taken as a whole, however, the Court believes that Ms. Stewart's fifty-percent reduction accurately reflects the prevalence and importance of the various issues involved in this litigation.

**B.   THE COURT WILL REDUCE THE FEE AWARD BECAUSE OF APS' SUCCESS ON A NUMBER OF ISSUES.**

Before addressing the merits of whether reduction for reduced success is warranted here, the Court must first determine whether such reductions can apply at all under IDEA.  Bell does not contend that reductions for limited success are per se inapplicable under the IDEA, but nonetheless urges the Court to avoid counting up the number of issues won and lost, and reducing fees accordingly.  Instead, Bell asks that the Court apply a more nuanced approach.  The Court agrees that doing a head count is an inappropriate way to gauge Bell's success on his IDEA claims and does not believe that APS is necessarily advocating such a formalistic approach.  The question is, however, what test the Court should use.

At the hearing, Ms. Stewart was resistant to the idea of applying <u>Hensley v. Eckerhart</u> to

IDEA fee awards.  She agreed, however, that 42 U.S.C. § 1988 has served as a model for dealing with attorneys' fees in IDEA litigation, and requested that the Court be nuanced and not mechanical in its approach.  See Tr. at 9:14-12:18 (Court & Stewart).  Hensley v. Eckerhart's command that courts review § 1988 fee awards based upon the litigant's success is based upon success being a factor in a reasonable fee award.  See Hensley v. Eckerhart, 461 U.S. at 433-34.  20 U.S.C. § 1415(i)(3)(B), the IDEA attorneys' fee provision, like 42 U.S.C. § 1988, allows for "reasonable attorneys' fees."  The language in the two statutes is identical, indicating that the same standard should govern.  More importantly, although the parties did not discuss this case at the hearing or in their briefing, the issue is a settled one for the Court, because the Tenth Circuit, in Urban by Urban v. Jefferson County School Dist. R-1, 89 F.3d at 729, held that Hensley v. Eckerhart applies to IDEA fee awards.  Since the hearing on this motion, the Tenth Circuit has reiterated, in Miller v. Bd. of Educ. of Albuquerque Public Schools, that Hensley v. Eckerhart applies to IDEA fee awards. See Miller v. Bd. of Educ. of Albuquerque Public Schools, 2009 WL 1297843 at *12-13.

Hensley v. Eckerhart leaves much of the details surrounding a fee award to the district court's discretion, but holds that "the most critical factor is the degree of success obtained."  461 U.S. at 436.  When confronting a situation where a plaintiff has been successful in part, courts must address two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"  Id. at 434.  The Supreme Court has directed courts to review fee awards in light of certain basic principles:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . .

> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.

Id. at 435-36.

APS points out what it views are several specific problems with Bell's request under the Hensley v. Eckerhart standard. According to APS, it prevailed on a number of claims during the administrative hearing and thirteen of the twenty-one witnesses called during that hearing gave testimony relevant only to those issues on which APS prevailed. APS also notes that it prevailed on the statute of limitations both before the DPHO and in federal court. APS requests that "Bell's attorney fee demand . . . be substantially reduced," Response at 17, but does not give a specific figure or percentage that APS believes is appropriate.

Turning first to the administrative-hearing issues, the Court believes that some reduction on this basis is warranted. Many of the issues at the administrative hearing on which APS was the victor were issues not advanced in the federal litigation. Any reduction on the basis of those issues should thus be confined to that portion of the fee request and not applied as part of an overall percentage reduction of the award. Ms. Stewart's itemized list of fees includes a total of $9,180.00 for preparation directly related to preparation for the due-process hearing, and a total of $8,420.00 for the hearing itself and preparation during the course of the hearing.[4] Ms. Ford's itemized list includes a total of $4,130.00 for work on pre-hearing briefing and preparation, a total of $6,982.50 for the hearing and witness preparation, and a total of $4,917.50 drafting proposed findings of fact

---

[4] The Court includes the following entries from Ms. Stewart's timesheet in reaching these figures: entries 22640-41, 22885, 23252, 23269, 23267, 23291-92, 23398, 23470, 23504-05, 23528, 23526-27, 23537-38, 23554, 23607-09, 23612-19 & 12656-57. See Steven Granberg Attorney at Law, P.A.: Slip Listing (dated December 11, 2008)(Doc. 207-3)("Stewart Timesheet").

and conclusions of law for the DPHO.[5]

Here, a number of the issues in the due-process hearing were ultimately unsuccessful for Bell.  On the other hand, Bell ultimately prevailed in federal court on an important issue: whether Bell was denied a FAPE. With these facts in mind, the Court believes that a sixty-percent reduction for the fees directly associated with the hearing is appropriate.  Such a reduction recognizes APS' success on many points, while also recognizing that Bell ultimately prevailed on the IDEA issues that were appealed from the hearing.  The issues on which APS prevailed, however, appeared to predominate at the hearing: twelve of the twenty-one witnesses at the hearing were relevant to issues on which APS prevailed, while a thirteenth, Susan Oetzel, a speech-and-language specialist, was, as the Court discusses later, only partially relevant to issues on which Bell would later prevail.  See Response at 15-16 (listing and discussing witnesses).  The sum total of the fees associated directly with the hearing is $33,630.00.  Sixty percent of that amount is $20,178.00.  The Court will therefore reduce Bell's request by $20,178.00.

APS also argues that a reduction is warranted because of its success on statute of limitations issues.  Later, however, APS specifically challenges the various line items related to the statute of limitations.  The Court will discuss the statute of limitations in that context.

## C.  THE COURT WILL REFER BELL'S REQUEST TO TAX COSTS TO THE CLERK'S OFFICE.

APS also challenges several specific costs included in Bell's request as being unrecoverable.

---

[5] The Court considers the following entries from Ms. Ford's timesheet in reaching these figures: 4/7, 5/14, 4/24, 4/30, 5/1, 5/6, 5/14 (both entries), 5/15 (both entries), 5/16 (both entries), 5/17, 5/14, 5/17, 5/18 (both entries), 5/19, 5/25, 5/26, 5/27 & 5/29/2006.  See Pegasus Legal Services for Children: Invoice (dated December 1, 2008)(Doc. 207-5)("Ford Timesheet").  The Court lists the entries in the order they appear in the timesheet and thus some of the dates appear after dates that would come later chronologically.

Motions to tax costs should first be directed to the Clerk's Office.  See In re Williams Securities

Litigation-WCG Subclass, 558 F.3d 1144, 1146 (10th Cir. 2009)(noting that clerks tax costs in the

first instance); Furr v. AT & T Technologies, Inc., 824 F.2d 1537, 1550 n.11 (10th Cir. 1987)("As

a procedural matter . . . a bill of costs is initially filed with the clerk rather than with the court.");

Fed. R. Civ. P. 54(d)(1)("The clerk may tax costs on 1 day's notice.").  If either party is dissatisfied

with the Clerk of Court's disposition of a costs award, that party may appeal the decision "[o]n

motion served within the next 5 days," Fed. R. Civ. P. 54(d)(1), and have the Court review de novo

the clerk's actions, see Furr v. AT & T Technologies, Inc., 824 F.2d at 1550 n.11.  Because the Clerk

of Court should make the initial decision on a bill of costs, with the Court exercising judicial review

over any objections, the Court will refer the costs Bell requests to the Clerk's Office.

### D.      SOME, BUT NOT ALL, OF APS' LINE-ITEM CHALLENGES ARE APPROPRIATE, AND THE COURT WILL REDUCE THE AWARD ACCORDINGLY.

APS' final set of challenges is to seventy-seven specific entries in Ms. Stewart's and Ms.

Ford's time logs.  Under the first half of the test in Hensley v. Eckerhart, a court has to determine,

in calculating fees, whether a "plaintiff fail[ed] to prevail on claims that were unrelated to the claims

on which he succeeded."  461 U.S. at 434.  "[I]f a plaintiff fails to prevail on claims 'unrelated' to

those on which he or she succeeds, work on the unrelated unsuccessful claims cannot be

compensated."  Ramos v. Lamm, 713 F.2d at 556.  APS' approach thus has a sound basis in law.

The Court must determine whether the various items APS challenges are unrelated to the IDEA

claims on which Bell was successful.  Some of APS' challenges are appropriate, while others are

not.  The Court will reduce the award to Bell accordingly.

APS first challenges three line items, for $60.00, $40.00, and $20.00 respectively,

see Stewart Timesheet at 2-3 (entries 22723-25), on the grounds that they relate to "1/25/06 IEP,

-26-

Bell turning 18 and power of attorney, and 12th grade year class," issues on which APS asserts it prevailed, Response at 20.  Bell's senior year and his IEP, however, are general matters relevant to the issues on which Bell prevailed and the final IEP was relevant to the Court's order of compensatory education.  Even if Bell knew in advance what would happen and limited his litigation only to issues on which he would ultimately prove successful, Ms. Stewart would have needed to understand these matters to provide competent representation.  The Court will include these fees in its award.

APS challenges another group of three fees, each of $40.00, on the grounds that APS prevailed on all claims regarding Bell's senior year.  See Stewart Timesheet at 3 (entries 22773 & 22852-53).  With respect to the first two fees, the Court agrees.  Those two entries concern ongoing events in the IEP process and were not issues on which Bell prevailed.  The third entry, however, concerns reviewing Bell's 2006 IEP.  While Bell did not per se prevail on the adequacy of Bell's final IEP, the Court believes that understanding that final IEP was important for the litigation on whether Bell was denied FAPE in general, the issue on which Bell prevailed.  The Court will therefore reduce the total award $80.00, but not $120.00, as APS wants.

APS next disputes a $60.00 and $40.00 fee because they relate to Bell's ACT exams.  See Stewart Timesheet at 4 (entries 23051 & 23107).  The Court is also not aware of how these entries are relevant to the claims on which Bell prevailed.  The Court will accordingly reduce the award by $100.00.

APS challenges several entries related to disputes over payments to Laura Smith, for $20.00, $80.00, and $20.00.  See id. at 6 (entries 23253 & 23268), 7 (entry 23333).  According to APS, no fees should be awarded for this issue because APS contracted Smith to conduct an independent education evaluation and a dispute arose when Smith billed APS for services that APS believed were

inappropriate.  APS disputes Ms. Stewart's billing for a dispute over billing between APS and Smith.  As Bell points out, the Court cited Smith's testimony at the due-process hearing and relied in part upon her testimony in concluding that Bell was denied FAPE.  See MOO at 44-45, 50-51 & 53-54.  Although Bell may not have had a direct financial stake in APS' billing dispute with Dr. Smith, it was in Bell's interest to ensure Dr. Smith testified.  Attorneys have to deal with many unusual situations when pursuing their clients' best interests.  This situation strikes the Court as an example of that fact and so the Court will not reduce the award for these fees.

APS challenges a $40.00 fee for a call with Mrs. Bell about transition services for Bell.  See id. at 6 (entry 23273).  This issue does not relate to the IDEA issues on which Bell prevailed.  The Court will not include the fee in its award.

APS then challenges a $160.00 fee because it involves Ms. Stewart's research on racism in education issues.  The Court agrees with the APS that this entry, see id. at 7 (entry 23334), does not have any bearing on the IDEA issues, but only on the discrimination issues on which APS won.  Accordingly, the Court will reduce the fee award by this amount.

APS disputes the $100.00 fee for Ms. Stewart's phone call with Mrs. Bell regarding the New Mexico High School Competency Exam, see id. at 7 (entry 23470), on the grounds that APS prevailed on the examination issues.  The examination, however, was tied in with Bell's graduation as well, on which Bell successfully overcame APS' argument that Bell's graduation mooted his IDEA claim, and was also relevant to whether Bell was denied FAPE.  See MOO at 54-57.  This particular issue is thus part of the same core facts underlying the claims on which Bell prevailed and which the Court believes Bell reasonably undertook in connection with the FAPE issues.  Even without a specific claim tied to the examination, Ms. Stewart would have needed to understand this

issue, and so the Court will not further reduce the award for this fee.[6]

APS disputes two fees, for $60.00 and $240.00, see Stewart Timesheet at 7 (entry 23471), 10 (entry 23656), relating to Oetzel and her provision of speech-and-language services to Bell. While APS may have prevailed on the narrow issue related to those services, Bell's speech and language education and testing were an important component of the background for the IDEA claims on which Bell prevailed. The Court will not reduce its award for these fees any more than it already has.

APS next challenges a substantial fee for $2,200.00, contending that these fees relate to excessive exhibits for the administrative hearing that are the result of "a shotgun style of litigation, with no discernment of meritorious claims from unmeritorious claims." Response at 20. Presumably, APS is not referring to Ms. Stewart's "review of all documents from APS," Stewart Timesheet at 8 (entry 23504), but to her comparing "records for trial preparation," id. The Court has already reduced this portion of the fee request because APS prevailed on many issues at the administrative hearing. The Court does not see any reason, however, to further reduce this large block of hearing preparation time that includes review of APS documents more than the sixty percent it already has. APS' next two challenges are similar challenges to Ms. Stewart's continued hearing preparation. See id. (entries 23505 & 23554). Again, the Court sees no reason to further reduce fees from the administrative hearing more than it already has.

APS challenges Ms. Stewart's $40.00 fee for readings APS' Answer, see Stewart Timesheet at 10 (entry 25621), on the grounds that it relates discrimination and retaliation claims. Bell's Complaint, however, raised IDEA issues and factual issues supporting them to which APS also

---

[6] The Court has also already reduced this item somewhat because of its relationship to the due-process hearing.

responded.  Given the importance of reading an opponent's Answer, the Court does not believe that this modest fee is unrelated to the claims on which Bell prevailed or should otherwise be reduced.

APS then challenges a $200.00 fee for preparation of initial disclosures and damages computations on the grounds that APS prevailed on all damage claims.  In requesting $200.00, Ms. Stewart reduced her original fee by half from $400.00.  See Stewart Timesheet at 11 (entry 27089). While the Court agrees that, given APS' success on all damage claims, fees for Bell's damage computations should not be recoverable, this entry also covers preparing initial disclosures more generally.  While cutting the fee in half may be somewhat overinclusive or underinclusive, the Court believes it is a fair approach in the circumstances of this case and will not further reduce the fee.

Next on APS' list is a $140.00 fee, see id. at 11 (entry 27096), that APS challenges because it relates to overidentification of African American students.  The Court agrees that this issue is not related to the claims on which Bell prevailed.  The Court will reduce the award by $140.00.

Another significant dispute APS raises is with Bell's requesting a total of $220.00 in fees related to the depositions of Gwen Richardson, Bell's natural mother, see id. at 14 (entry 27496), 15-16 (entries 27750-51, 27566, 27766, 27848-49, 27872), and another $2,300.00 in fees related to Edgar Bell's and Mrs. Bell's depositions, see id. at 14 (entries 27497, 27502, 27536), 15 (entries 27554).  APS contends that these depositions dealt with the retaliation and discrimination issues on which APS prevailed.  Bell disagrees and asserts that he had little choice but to participate in Mrs. Bell's deposition, at great cost, although the deposition was "for no purpose at all," Reply at 17, while Ms. Richardson's deposition included significant questioning from APS on Bell's early development, "in [an] apparent attempt to show that he met the characteristics of a person with mental retardation," id.

Bell does not give a specific response on Edgar's deposition, and the Court is not aware of

any relevance his testimony had or might have had to the issues on which Bell prevailed. The Court will not include the $580.00 listed for Edgar's deposition. Several of the entries involving Edgar are intertwined with Mrs. Bell. Although the Court is reluctant to say that her depositions served no purpose, Mrs. Bell had some relevance to the IDEA issues, and it is reasonable to expect that Bell would have to defend depositions of her. Her relevance to the issues on which Bell succeeded, however, was not great, so a reduced award is appropriate. While Bell's request is not completely clear, it appears that Bell requests $1,720.00 all together related to Mrs. Bell's deposition, or both Edgar's and Mrs. Bell's deposition. The Court believes that only a third of that award is appropriate and will accordingly reduce the overall award by $1,147.00.

As to Ms. Richardson, based upon Ms. Stewart's representation that some of the deposition was related to issues on which Bell prevailed, the Court believes that a partial fee award is appropriate. Bell seeks $220.00 total related to Ms. Richardson's deposition. In these circumstances, the Court believes half that is a fair award and will accordingly reduce the total award to Bell by $110.00.

APS contests a $20.00 fee for Ms. Stewart talking with Mrs. Bell about witnesses to contact. See Stewart Timesheet at 15 (entry 27555). APS argues that this fee is related solely to discrimination and retaliation claims. This contention appears correct, and the Court will reduce the overall award by $20.00.

APS also challenges $480.00 and $160.00 in fees related to Julie Glinski's deposition, see id. at 17 (entries 27976-77), on the grounds that the Court found her testimony unhelpful and did not use it to supplement the record. For the same reason, APS also challenges $80.00 and $600.00 in fees related to Dolores Fresquez' deposition, see id. (entries 28027-28), and $500.00 and $100.00 in fees related to Wendy Shanahan's deposition, see id. at 20 (entries 28329-30). These challenges

are not based upon the testimony being unrelated to a claim upon which Bell did not succeed.  When an item is related to a claim on which the plaintiff is successful, the question is whether the fee is reasonable given the relief obtained.  Just because the Court declined to supplement the record with Glinski's, Fresquez', or Shanahan's testimony does not mean that Bell was unreasonable in offering their testimony.  The Court believes that Bell's decision was reasonable and that these fees should not be reduced.

APS also challenges three fees, for $20.00, $60.00, and $140.00, related to the deposition of Ann Plante, one of Bell's middle school teachers.  See Stewart Timesheet at 20 (entry 28342), 21 (entry 28444), and 22 (entry 28443).  The Court is not aware of Plante being relevant to any issue on which Bell prevailed.  The Court will reduce the fee award by $220.00.

Several large fee requests that APS challenges relate to the deposition of Dr. Rostetter, who APS contends was its expert on Bell's race-discrimination claim.  Ms. Stewart's time logs include $1,400.00, $600.00, and $1,100.00 in fees related to Dr. Rostetter's deposition.  See id. at 22 (entries 28478-80).  Ms. Ford also includes $370.50 for conducting research on Dr. Rostetter.  See Ford Timesheet at 3 (entry for 12/12/07).  According to Bell, Dr. Rostetter intended to offer opinions relevant to the IDEA claims, and APS decided to not present him as a witness during the hearing on supplementing the record sometime after May 2008.

After reviewing Dr. Rostetter's report, the Court believes that both APS' and Bell's contentions have merit.  Dr. Rostetter's report devotes a substantial amount of time to two issues that are related to the IDEA, but not to the claims on which Bell prevailed.  The report contains a number of opinions on two topics in this vein, and concludes that APS did not exhibit a pattern of identifying black students as mentally retarded and did not provide services to Bell in a manner that was characteristic of such mislabeling notwithstanding a lack of disproportionate representation.

See Exhibit I to Response, Expert Report: David Rostetter Ed. D. at 4-9 (Doc. 213-10).  As Bell notes, however, the report also discusses that Bell derived educational benefits from APS' programs and that the programs were calculated for that purpose.  See id. at 9-10.  APS also indicated that it might call Dr. Rostetter during the hearing to supplement the administrative record, but later decided against it.  See Transcript of May 20, 2008 Hearing at 215:15-20 (Stewart)(Doc. 141)(discussing APS' reservation of right to submit additional evidence); 216:21-23 (Caricco)(noting two possible experts).  That APS did not call Dr. Rostetter would not vitiate the need for Bell to have his deposition when it was possible he would be a witness.  With these facts in mind, the Court concludes that some of Dr. Rostetter's deposition would be reasonably related to the issues on which Bell prevailed.  The majority of Dr. Rostetter's purpose in the litigation, however, was to address other issues on which Bell did not prevail so some reduction is appropriate.  Two of Ms. Stewart's fee entries, for $1,400.00 and $1,100, however, were largely for travel time and not for the deposition itself.  Ms. Ford's only charged fee is for researching Dr. Rostetter.  Travel would be necessary regardless whether Dr. Rostetter's testimony was completely on issues on which Bell prevailed or on only partially on such issues.  In other words, these fees would likely have been incurred even if there were no issues related to systematic mislabeling of Africa-American students. It is therefore not appropriate to reduce the requested fees for travel.  Some research on Dr. Rostetter would also be necessary, but the Court believes that the depth and nature of the research would differ if Dr. Rostetter were testifying to a more limited range of issues.  Accordingly, the Court will reduce the fee request for research by half.  Finally, given that the bulk of Dr. Rostetter's testimony was on discrimination-based issues, the Court believes that it is appropriate to give Bell a quarter of the fees requested for the deposition.  Accordingly, the Court will reduce the fee award by $635.25.

Another significant attack that APS makes on Bell's fee request is a series of fees related to briefing on a motion for summary judgment.   APS challenges a total of $4,390.00 in fees, see Stewart Timesheet at 24 (entry 28729), 26 (entries 28942 & 28968), and 27 (entries 29115 & 29197-98), contending that, although several of the entries refer to "IDEA eligibility," the issues in the motion for summary judgment in question were unrelated to those on which Bell was successful, but rather were discrimination and constitutional claims.   The motion for summary judgment was on Bell's equal protection and due process claims.   For those claims, Bell argued that he had been misidentified as mentally retarded and suffered reputational and educational injuries as a result.   Bell conceded that he could not prove an equal-protection violation.   See Memorandum Opinion and Order at 34, entered May 6, 2008 (Doc. 129)("May 6 MOO").   The Court also granted summary judgment to APS on the due-process claim.   In doing so, the Court assumed that Bell had been misidentified, but held that his due-process hearing was a name-clearing event that precluded finding APS liable under the Due Process Clause.   See May 6 MOO at 42-43.

The facts underlying APS' motion for summary judgment and Bell's IDEA appeal thus overlapped to a significant degree.   Both matters involved Bell's misidentification and his educational treatment.   The constitutional claims at issue in APS' motion for summary judgment, however, presented different legal theories than his IDEA claim and were thus ultimately different claims than those on which he succeeded.   Because of the factual overlap, the Court would likely allow the fees if they related to discovery or similar matters.   All the fees challenged, however, relate to the legal work on preparing briefing and arguing against APS' motion for summary judgment.   Such efforts are thus directly tied to a claim on which Bell did not succeed.   The Court will exclude the $4,390.00 in fees from the total award.

On similar grounds to the challenges against fees for the depositions of various witnesses

for the hearing on supplementing the record, APS challenges $600.00, $1,180.00, and $360.00 in fees for preparation for the hearing to supplement the record and the hearing itself, see Stewart Timesheet at 28 (entries 29926-27, 29929), except as those fees relate to Dr. Trent.  For the same reasons that the Court believes that the depositions of the witnesses besides Dr. Trent who appeared at the hearing were reasonable and in furtherance of the issues on which Bell ultimately prevailed, the Court does not believe that deposition fees for these witnesses should be reduced.  Bell may recover these fees in full.

A number of APS' challenges are directed at the fees charged for work on the statute of limitations issues in this case.   All together, APS contests $3,460.00 in fees Ms. Stewart accumulated, see Stewart Timesheet at 13 (entry 27394), 15 (entries 27636, 27643 & 27938-39), and 27 (entries 29367 & 29390), and $3,073.50 in fees Ms. Ford recorded, see Ford Timesheet at 1 (entries for 4/11, 4/12, 4/21 & 4/24/2006) and 2 (entry for 7/22/2007).  APS correctly contends that it prevailed on the statute of limitations issue.  This issue, however, was related to the claim on which Bell prevailed.  APS won the battle, but lost the war.

The appropriate test here is thus the degree of relief that Bell received and whether the Court should reduce these fees because of Bell's reduced success on his IDEA claims.  APS' victory on the statute of limitations limited the degree of APS' liability, but Bell ultimately received over a year of compensatory education and the Court found that APS had mislabeled him and denied him FAPE. See MOO at 59-60.  Despite limiting liability, the Court also allowed evidence regarding events outside the limitations period.  Some reduction is appropriate to reflect the reduced success, but ultimately these fees are reasonably related to a claim on which Bell succeeded.  The Court will reduce the fees by a half, a total reduction of $3,226.75 from the overall award.

APS challenges a $430.00 fee Ms. Stewart recorded for researching legal issues in response

to APS' motion for summary judgment on damages.  On her timesheet, Ms. Stewart has already cut this rate in half.  See Stewart Timesheet at 29 (entry 30082).  Her entry indicates that her research included IDEA research and the remedies available under the IDEA, which was an issue in the motion.  APS contended that the IDEA did not allow money damages, see APS' Brief in Support of Motion to Dismiss, or in the Alternative for Summary Judgment, on Plaintiff's Claim for Damages at 1-3, filed January 18, 2008 (Doc. 83), and Bell conceded this point, but argued that he did not seek damages and that an equitable remedy under the IDEA could encompass a monetary award, see Plaintiff's Response in Opposition to APS' Motion to Dismiss or in the Alternative for Summary Judgment on Plaintiff's Claim for Damages at 1-4, filed June 13, 2008 (Doc. 138).  The Court granted APS' motion and held that Bell could not receive damages under Section 504 of the Rehabilitation Act or Title VI.  See Memorandum Opinion and Order at 1-2, entered August 28, 2008 (Doc. 155). Of course, the Court also ultimately granted Bell compensatory education. Because there were issues from the IDEA appeal intertwined the motion for summary judgment, the Court believes that this fee request should be reviewed under the prong of Hensley v. Eckerhart dealing with issues that are related to claims on which the plaintiff prevailed.  Under this approach, the Court believes that the fifty-percent reduction Ms. Stewart has already made is appropriate to discount her time working on the motion and the Court will not further reduce the award.

APS' penultimate dispute is with Ms. Stewart's fee requests is over her listing a $20.00 fee for calendaring new trial deadlines.  See Stewart Timesheet at 31 (entry 30639).  The jury verdict was in APS' favor at trial, and the trial also had nothing to do with the IDEA issues on which Bell later prevailed.  Accordingly, the Court will not include this $20.00 fee in its award.

For its final line-item challenges, APS contends that the Court should not allow three fees Ms. Ford recorded for researching disproportionate minority representation in special education, for

$877.50, $195.00, and $585.00.  See Ford Timesheet at 3 (entries for 7/24, 10/15 and 10/17/07). The Court agrees.  As the Court has already noted, APS succeeded on the overrepresentation claims and so the Court will not include these fees, a total of $1,657.50, in its award to Bell.

APS closes with a blanket dispute to all other fees listed in Ms. Stewart's and Ms. Ford's time logs on the grounds that they fail to articulate what claims they involve and to all fees for dates after May 2006 that are not expressly related to certain events directly related to the IDEA appeal. Contrary to APS' assertion, the Court believes that Ms. Ford's and Ms. Stewart's billing is detailed and thorough.  Their statements could be more detailed.  They could have spent a minute describing a minute of work and presented the Court with hundreds of pages of invoices and statements.  That is not necessary.  Attorneys' fees should not spawn their own cases spun-off from the original litigation.  See Hensley v. Eckerhart, 461 U.S at 437 ("A request for attorney's fees should not result in a second major litigation.").  What Bell's lawyers have presented is detailed and adequate, with their individual time entries succinctly describing the basis for the fee.  The Court also finds no sufficient basis for concluding that a further reduction beyond the fifty-percent reduction Ms. Stewart has already applied to those fees related to both IDEA and discrimination issues.  The Court believes that Ms. Stewart's assessment that a fifty-percent overall reduction is warranted is a fair and appropriate assessment.  Because the work is related to issues on which Bell prevailed, the proper inquiry is whether the work was reasonably necessary to those issues and whether the amount is justified by the degree of success.  See Hensley v. Eckerhart, 461 U.S. at 434.  Under these principles -- and keeping in mind that many fees related to the discrimination issues alone are not included in the request -- the Court believes that some reduction is appropriate, but that Ms. Stewart's choice strikes a fair balance.  The Court will not make any further reductions beyond those it has already made.

Adding up all the reductions in attorneys' fees that the Court believes is appropriate, the overall award should be reduced by $32,704.50. Bell requested $114,454.27 in attorneys' fees. This amount includes gross receipts tax, but the amount of the tax is not broken out anywhere in the briefing. Gross receipts tax in Albuquerque, where both attorneys are located, is, according to the most recent publication from the New Mexico Department of Taxation and Revenue, set at a rate of 6.750%. See Gross Receipts Tax Rate Schedule at 1, available at http://www.tax.state.nm.us/pubs/GrossReceiptsRates/grt_rates_july_2008.pdf.[7] With gross receipts tax included, the amount of the award that should be excluded is $34,908.78. The total award for attorneys' fees is thus $79,545.49. Of that award, $74,515.68 would be for fees and $5,029.81 would be gross receipts tax.

**IT IS ORDERED** that the Plaintiff's Motion for Award of Attorney's Fees Pursuant to IDEA and for allowable Costs and Memorandum in Support is granted in part, denied in part, and referred to the Clerk's Office for the District of New Mexico in part. The Court will award Plaintiff Chanselor Bell attorneys' fees in the amount of $79,545.49 total. The Court will refer Bell's request for $15,875.35.00 in costs to the Clerk's Office.

_____
UNITED STATES DISTRICT JUDGE

---

[7] Neither party submitted calculations on gross receipts tax or discussed whether non-profit exceptions apply to certain of the fee requests for Ms. Ford's work. Accordingly, the Court will use the general tax rate.

-38-

*Counsel:*

Tara Ford
Pegasus Legal Services
Albuquerque, New Mexico

 -- and --

Gail S. Stewart
Steven Granberg Attorney at Law, P.A.
Albuquerque, New Mexico

> *Attorneys for the Plaintiff*

Michael L. Carrico
Samantha M. Adams
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

> *Attorneys for the Defendant*